**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

TERESA READNOWER,

          Plaintiff,

    v.                            Case No. C-1-01-654

GENERAL IONICS, INC.,

          Defendant.

## ORDER

       This matter is before the Court upon defendant's motion for summary judgment (doc. 20), plaintiff's opposing memorandum (doc. 25), defendant's reply (doc. 33), defendant's proposed findings of fact and conclusions of law highlighted by plaintiff (doc. 27), plaintiff's proposed findings of fact and conclusions of law highlighted by defendant (doc. 35), and plaintiff's notice of supplemental authority (doc. 41). The matter is also before the Court upon defendant's motion to strike affidavits (doc. 36), plaintiff's opposing memorandum (doc. 42), and defendant's reply (doc. 43).

### I. Introduction

       Plaintiff Teresa Readnower brings this action under Title VII, the Family Medical Leave Act (FMLA), and state law. She brings claims for (1) gender discrimination in violation of Title VII and O.R.C. § 4112 based on a pattern and practice of gender discrimination, disparate

1

treatment, and termination of plaintiff's employment (Counts I and II); (2) sexual harassment in

violation of O.R.C. § 4112 (Count III); (3) retaliation against plaintiff for her complaints of

gender discrimination and sexual harassment in violation of Title VII and O.R.C. § 4112.02

(Counts IV and V); (4) retaliation against plaintiff for exercise of her rights under the FMLA

(Count VI); and (5) breach of Ohio public policy against gender discrimination, sexual

harassment, and retaliation (Count VII).

## II. Motion for summary judgment

Defendant moves for summary judgment in its favor on each of plaintiff's claims. First,

defendant argues that plaintiff cannot establish a prima facie case of gender discrimination under

Title VII or state law because disrespect allegedly shown plaintiff by her supervisor, Daniel

Goins, does not constitute an adverse employment action, and there is no evidence that a

similarly-situated male employee was treated more favorably than plaintiff; plaintiff cannot

demonstrate a prima facie case of "quid pro quo" sexual harassment because plaintiff cannot

show that she was subjected to a sexual advance by Goins and there is no connection between

the sexual advance alleged by plaintiff and her termination over a year later; plaintiff cannot

establish a prima facie case of hostile environment sexual harassment because the four allegedly

sex-related incidents on which plaintiff bases her claim were not so severe and pervasive as to

alter her working conditions; and plaintiff failed to take advantage of defendant's sexual

harassment policy so that defendant has an affirmative defense to her claims.

Second, defendant alleges that plaintiff cannot establish a prima facie case of retaliation

with respect to changes in her job, including changes in her work schedule and job

responsibilities, because those changes took place before she ever engaged in any protected

activity; she cannot prove a causal connection between her complaints of alleged gender discrimination and her termination because defendant had legitimate, non-retaliatory reasons for the termination; and plaintiff cannot show a causal connection between her filing of an EEOC charge and her termination because defendant had decided to terminate plaintiff before she filed her charge.

Defendant asserts that plaintiff cannot prevail on her FMLA claim because the allegedly retaliatory job changes occurred before she engaged in any activity protected by the FMLA, there is no causal connection between her FMLA leave and her termination because defendant had a legitimate reason for terminating plaintiff's employment, and plaintiff cannot establish pretext because temporal proximity alone is insufficient to establish pretext.

Defendant further argues that assuming plaintiff can satisfy her prima facie cases, she cannot show that defendant's legitimate, non-discriminatory reasons for her termination, i.e., that defendant learned of serious misconduct by plaintiff as a supervisor, including demeaning and intimidating her employees and supplying them with alcohol and drinking with them during work hours, are pretextual.

Finally, defendant contends that plaintiff's public policy claim must fail because she cannot establish a prima facie case for any of her other claims.

### III. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

### IV. Undisputed facts

1.  Defendant General Ionics, Inc. (Ionics) sells and services residential and commercial water conditioning equipment. The driving force behind defendant's sales is telemarketing.

2.  Ionics has four offices, including one in Cincinnati, Ohio. Each office is under the supervision of a General Manager.

3.      Plaintiff Teresa Readnower was employed by Ionics in its Cincinnati office from January 1992 through January 24, 2001.

4.      Plaintiff served as the Phone Room Supervisor in the Cincinnati office for four years beginning in 1996. Her duties included supervising the telemarketers, overseeing the phone room operations, providing support and training, responding to problems, and fostering a positive work environment.

5.      The Phone Room Supervisor reports directly to the General Manager and also reports to the Assistant General Manager. The General Manager is responsible for the overall success of the office. Consequently, the General Manager sets goals and standards for each department and implements the procedures necessary to effectuate those goals. As part of this responsibility, the General Manager has the authority to set the hours of the telemarketing department.

6.      Until July 2000, plaintiff reported to General Manager Darrell Brandenburg. In July 2000, Daniel Goins was promoted from Assistant General Manager to General Manager of the Cincinnati office. Shortly after his promotion, Goins promoted Tina Wade to the position of Assistant Supervisor of the phone room.

7.      The primary hours of operation of the phone room were Monday through Friday from 2:00 p.m. to 9:00 p.m. and Saturdays from 9:00 a.m. to 5:00 p.m.

8.      In her capacity as Phone Room Supervisor, plaintiff originally worked from 9:00 a.m. to 5:00 p.m. Monday through Friday. Her schedule was altered beginning in July/August 2000. Under her new schedule, plaintiff was required to work evenings and Saturdays.

9.      Toward the end of 1999, plaintiff and Goins attended a statewide Ionics party. The party

occurred at a hotel, and the employees were invited to spend the night at the hotel where

the party was held. Late in the evening after the party was over, plaintiff encountered

Goins in the hallway of the hotel. Goins offered plaintiff a glass of wine. The parties

dispute the details of the encounter, which plaintiff perceived to be a sexual advance.

10.     In September 2000, plaintiff informed Goins that she needed a colonoscopy. She told him

that she needed to take medication the day before the procedure, that she would need to

be off the day of the procedure, and that she was unsure about the day after the

procedure. Goins asked plaintiff if she could change her dosing schedule the day before

the procedure so that she could cover the evening shift. Plaintiff inquired of her doctor if

she could do so, and the doctor said she could not. Goins accepted the doctor's decision.

11.     Goins received an anonymous phone call in late August 2000 informing him that some

telemarketers were drinking alcohol during working hours. When Goins discussed the

matter with plaintiff, she denied any knowledge of the drinking.

12.     Goins met with the telemarketers who had been identified as being involved in the

drinking. Each of them admitted to drinking on the job. Goins and plaintiff then jointly

issued a warning memorandum to these three members of plaintiff's department. At no

time throughout the process did plaintiff ever disclose that she had been involved in the

drinking. Goins put a stop to any further consumption of alcohol at Ionics.

13.     Over the next couple of months, plaintiff's working relationship with Goins deteriorated.

14.     In September 2000, plaintiff complained to Jack Bredel, then president of Ionics, about

Goins' management style. At Bredel's request, plaintiff reduced her complaints to

6

writing.

15.     Plaintiff submitted a letter dated September 23, 2000, to Bredel. In the letter, plaintiff

        outlined numerous complaints about Goins, including Goins hiring of his wife, his wife's

        work hours, changes Goins had made to the telemarketing script, Goins' elimination of

        the company survey program, and changes to telemarketers' compensation.

16.     Bredel, who was close to retirement, forwarded plaintiff's letter to David McKinley,

        Director of Operations for Ionics. McKinley had a follow-up conversation with plaintiff

        regarding her complaints about Goins' management style.

17.     As part of his investigation into plaintiff's concerns, McKinley discussed the matter with

        Goins. During the conversation, Goins raised numerous concerns about plaintiff's job

        performance, including excessive absenteeism, an unwillingness to adhere to her revised

        work schedule, a demeaning management style causing low morale in the marketing

        department, high turnover in the marketing department, and significantly decreased

        production in the department.

18.     Goins then contacted Julie Seger, Ionics' Director of Human Resources, to discuss his

        concerns about plaintiff's job performance and ways to address those concerns.

19.     On October 11, 2000, upon Seger's recommendation, Goins addressed his concerns with

        plaintiff in a meeting and in writing. Goins also outlined the improvements he expected

        plaintiff to make.

20.     Shortly thereafter, plaintiff's counsel sent a letter dated October 13, 2000, to defendant

        raising allegations of sexual harassment, gender discrimination, FMLA violations, and

        retaliation.

7

21.    On October 12, 2000, following her meeting with Goins, plaintiff called in sick for the day and indicated that she would be out of the office sick for the rest of the week. Plaintiff also called in sick at the beginning of the week of October 16, 2000.

22.    On October 17, 2000, Goins called plaintiff at home and asked that she provide a doctor's excuse for her absence.

23.    On October 19, 2000, plaintiff's physician sent a fax to Ionics indicating that plaintiff could return to work on October 25, 2000.

24.    On October 23, 2000, Goins spoke with plaintiff's physician by telephone. During this conversation, the physician indicated that plaintiff suffered from a severe, generalized anxiety disorder and had for ten years.

25.    Thereafter, plaintiff requested a medical leave of absence. Ionics granted her request and plaintiff remained on FMLA leave through January 24, 2001.

26.    In response to the October 13, 2000 letter from counsel, Seger conducted an investigation into plaintiff's allegations. Seger travelled from her office in Pittsburgh to meet with plaintiff in Cincinnati at a neutral location to discuss plaintiff's concerns and allegations. As part of her investigation into plaintiff's allegations, Seger interviewed nine telemarketers supervised by plaintiff.

27.    While she was on medical leave, on January 18, 2001, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. She alleged claims for gender discrimination and retaliation. Plaintiff asserted that she had been treated in a hostile and harassing manner by Goins; that she was the only female manager in the office and the only one being treated this way; and that male managers were receiving more favorable treatment. She further explained that she had complained to McKinley, who in turn had relayed the entire conversation to Goins.

28.    Upon her return from medical leave in January 2001, plaintiff was called into a meeting with McKinley and Seger. Seger informed plaintiff that she was being terminated. Seger gave as a reason for plaintiff's termination "the alcohol thing." No one mentioned complaints from telemarketers during the meeting. Plaintiff alleges that Seger also cited friction between plaintiff and Goins as a reason for the termination. Defendant alleges that it also terminated plaintiff's employment based on telemarketers' complaints as to her conduct as a supervisor, although it is undisputed that defendant did not mention this as a reason for plaintiff's discharge at the termination meeting with plaintiff.

29.    On March 28, 2001, plaintiff filed a second charge of discrimination with the EEOC alleging gender discrimination and retaliation.

### V. Opinion

### 1. Notice of supplemental authority

Plaintiff has given notice of the Sixth Circuit's decision in ***Wexler v. White's Fine Furniture,*** 317 F.3d 569 (6th Cir. 2003), and asks the Court to consider the decision with respect to certain arguments raised in her opposing memorandum. Plaintiff also requests leave to provide

additional briefing on the issues presented by those arguments in light of the ***Wexler*** decision.

The Court has reviewed and considered the decision in ***Wexler*** as it relates to the arguments raised by plaintiff. The Court finds that additional briefing would not assist it in resolving the summary judgment motion and denies plaintiff's request to submit further briefing.

### 2. Motion to strike affidavits

Defendant moves to strike the affidavits of Charlotte Ray and Brian Huckstep, both of which are attached as exhibits to plaintiff's memorandum in opposition to defendant's motion for summary judgment. Defendant claims that the affidavits should be stricken because they were not provided to defendant prior to the filing of plaintiff's memorandum in opposition to the motion for summary judgment, despite defendant's discovery requests specifically asking that they be provided. In addition, defendant argues that Ray's affidavit should be stricken because it contains inadmissible statements of opinion and hearsay and inadmissible statements concerning other unrelated alleged wrongs or acts on the part of defendant and Goins. As an alternative to striking Ray's affidavit, defendant asks that the Court not afford the affidavit any weight.

In response, plaintiff contends that she provided the affidavits to defendant as soon as they became available by including them in her opposing memorandum. Plaintiff also argues that Ray's opinion testimony is both relevant and admissible.

Defendant relies on Fed. R. Ev. 401-404 and 801-802 and Fed. R. Civ. P. 56(e) in support of its motion to strike. None of those rules provide for the striking of a pleading or any other filing. Fed. R. Civ. P. 12(f) is the only federal rule that mentions a motion to strike, and Rule 12(f) "relates only to pleadings and is inapplicable to other filings." ***Dawson v. City of Kent***, 682

F.Supp. 920, 922 (N.D. Ohio), *aff'd*, 865 F.2d 257 (6th Cir. 1988). There is no basis in the federal rules for striking an affidavit or portions thereof. See *Lombard v. MCI Telecommunications Corp.*, 13 F.Supp. 2d 621, 625 (N.D. Ohio 1998). Therefore, "a Court should '*disregard*' inadmissible evidence, not strike that evidence from the record." *Id*. (emphasis in original) (citing *State Mut. Life Assur. Co. of America v. Deer Creek Park*, 612 F.2d 259, 264 (6th Cir. 1979); *Mitchell v. Toledo Hosp*., 964 F.2d 577, 582 (6th Cir. 1992)). Accordingly, the Court will not strike the Ray affidavit on the ground that it contains inadmissible statements, but the Court will disregard any statements contained in the affidavit which are inadmissible or irrelevant to the issues presented by the summary judgment motion.

The Court declines to strike the Ray and Huckstep affidavits on the ground that plaintiff failed to provide them to defendant during the discovery period. Defendant has not shown how it has been prejudiced as a result of plaintiff's failure to supplement her discovery requests. Defendant had an opportunity to respond to the affidavits and did respond in its reply in support of the motion for summary judgment. The Court has considered defendant's arguments in ruling on the summary judgment motion.

### 3. Gender discrimination

Claims of gender discrimination under Ohio law are to be analyzed under the same evidentiary framework applicable to a Title VII claim. *Mitchell v. Toledo Hospital,* 964 F.2d 577, 582 (6th Cir. 1992). In order to establish an employment discrimination claim, plaintiff must introduce direct evidence of discrimination or prove inferential and circumstantial evidence which would support an inference of discrimination. *Kline v. TVA,* 128 F.3d 337, 348 (6th Cir. 1997). Plaintiff need only prove direct or circumstantial evidence, not both. *Id.* at 348-49.

If plaintiff presents direct evidence of discrimination, the ***McDonnell-Burdine*** paradigm is of no consequence. ***Kline,*** 128 F.3d at 349. If direct evidence of discrimination is lacking, plaintiff must prove a prima facie case of discrimination. In order to establish a prima facie case of discrimination, the plaintiff must show:

> 1) that [s]he is a member of a protected group, 2) that [s]he was subject to an adverse employment decision, 3) that [s]he was qualified for the position, and 4) that [s]he was replaced by a person outside of the protected class.

***Kline,*** 128 F.3d at 349 (citing ***Mitchell,*** 964 F.2d at 582).  Plaintiff may also establish the fourth prong of a prima facie case by showing that she was treated less favorably than a similarly-situated male employee. See ***Clayton v. Meijer, Inc.,*** 281 F.3d 605, 610 (6th Cir. 2002).  In such a case, plaintiff must prove that all relevant aspects of her employment situation were similar to those of the male employee with whom she seeks to compare herself. ***Ercegovich v. Goodyear Tire & Rubber Co.,*** 154 F.3d 344, 352 (6th Cir. 1998). To be similarly-situated in a disciplinary context, the individuals must have dealt with the same supervisor, they must have been subject to the same standards, and they must have engaged in the same conduct without such differentiating or mitigating circumstances which would distinguish their conduct or the employer's treatment of them for that conduct. ***Id.*** at 352 (quoting ***Mitchell,*** 964 F.2d at 583); ***Smith v. Leggett Wire Co.,*** 220 F.3d 752, 762 (6th Cir. 2000). Precise equivalence in culpability between employees is not required. ***Smith,*** 220 F.3d at 762 (citing ***Harrison v. Metropolitan Government,*** 80 F.3d 1107, 1115 (6th Cir. 1996)). An employer's more severe treatment of more egregious circumstances cannot give rise to an inference of discrimination sufficient to support a prima facie case. ***Clayton,*** 281 F.3d at 612.

In order to establish an "adverse employment action", plaintiff must show "a materially adverse change in the terms and conditions of [her] employment." *Hollins v. Atlantic Company,* 188 F.3d 652, 662 (6th Cir. 1999).

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana,* 993 F.2d 132, 136 (7th Cir. 1993)). The Court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when determining if plaintiff has established a prima facie case. *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 574 (6th Cir. 2001)(en banc).

If plaintiff establishes her prima facie case, the burden to go forward with the evidence then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248 (1981). If the defendant carries this burden, the plaintiff must prove that the proffered reason is pretextual. *Id.* The plaintiff can establish pretext by a direct showing that a discriminatory reason more likely motivated the employer or by indirectly showing that the employer's reason is not credible. *Kline,* 128 F.3d at 342-43. Under appropriate circumstances, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 148 (2000).

The United States Court of Appeals for the Sixth Circuit has categorized different evidentiary bases for three types of pretext showings: 1) defendant's reasons had no basis in fact; 2) the reasons did not actually motivate the discharge; or 3) the reasons were insufficient to motivate a discharge. ***Manzer v. Diamond Shamrock Chemicals Company,*** 29 F.3d 1078, 1084 (6th Cir. 1994). The first type of showing consists of evidence that the reason offered for the plaintiff's discharge never happened, i.e., that the reason is factually false. ***Id.*** The third showing ordinarily consists of evidence that other employees, particularly those outside the protected class, were not discharged even though they engaged in conduct substantially identical to that which purportedly motivated the plaintiff's discharge. ***Id.*** The first and third showing permit, but do not require, the factfinder to infer illegal discrimination from the plaintiff's prima facie case. ***Id.***

For the second showing, where the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal, plaintiff must introduce additional evidence of discrimination because the reasons offered by the defendant are not directly challenged and therefore do not bring about an inference of discrimination. ***Id.*** Plaintiff must therefore come forward with circumstantial evidence of discrimination which makes it "'more likely than not' that the employer's explanation is a pretext, or coverup." ***Id.***

Plaintiff has established the first three prongs of a prima facie case of gender discrimination. She is a member of a protected class, she suffered an adverse employment action in that she was terminated from her employment, and defendant does not dispute that plaintiff was qualified for her position. Plaintiff has attempted to establish the fourth prong of her prima facie case by alleging that defendant treated her differently than similarly-situated male employees,

14

including Service Manager Barry Bailey. Plaintiff asserts that defendant took no action against Bailey for (1) drinking alcohol in the Ionics warehouse, and (2) failing to report an incident where he discovered three underage telemarketers consuming alcohol in the warehouse while on break, whereas plaintiff was purportedly terminated for similar conduct.

Plaintiff has failed to show that she and Bailey were similarly situated. Several telemarketers reported to Humans Resources Director Seger that plaintiff had supplied alcohol to underage telemarketers under her supervision and had drunk alcohol with them during working hours. Plaintiff does not directly challenge these allegations, and she does not contend that defendant's conclusion that she had engaged in this conduct is unfounded. Bailey, on the other hand, did not supply alcohol to other employees but admittedly failed to report having observed underage telemarketers, who were not under his supervision, drinking in the company warehouse. Furthermore, Bailey was not accused by anyone of drinking alcohol during work hours or ever discovered doing so. Rather, Bailey admittedly drank alcohol in the warehouse while off the clock, a practice to which Ionic's former General Manager had turned a blind eye and to which Goins put a stop after he learned of the practice. Thus, the record does not support a finding that plaintiff and Bailey engaged in conduct of comparable seriousness so as to establish the fourth prong of plaintiff's prima facie case.

Plaintiff also alleges that she was treated differently than Goins, who was not disciplined despite the fact that plaintiff had made complaints about his management style, which were similar to the telemarketers' complaints against her on which defendant purportedly relied in discharging plaintiff. Plaintiff also alleges that she was treated differently than Brian Huckstep, a former Assistant Manager, and other unnamed male managers. Plaintiff has submitted an affidavit by Huckstep in which he states that defendant had Christmas parties where alcohol was served to

employees and guests, that the guests included some employees' underage children, that the parties were attended by other members of management, including himself and Goins, and that Huckstep personally observed underage individuals consume alcohol at Ionics parties in 2000 and 2001. Plaintiff asserts that these managers were not disciplined for attending the parties.

Plaintiff's allegations and Huckstep's affidavit, if accepted as true, are insufficient to establish that plaintiff was treated differently than similarly-situated male managers. Obviously Goins, who was plaintiff's supervisor, was not similarly situated to plaintiff. Furthermore, plaintiff's evidence does not show that Goins or other male managers under Goins' supervision committed infractions of comparable seriousness to those of plaintiff and that defendant knew of those infractions. There is no allegation or evidence that Goins or other managers supplied alcohol to underage individuals, that any manager other than Huckstep was aware that underage individuals were drinking at company-sponsored parties, that Goins or any other manager knew that Huckstep had observed underage individuals drinking at the parties, or that the parties took place on company premises or during work hours. For these reasons, plaintiff has failed to establish the fourth prong of a prima facie case of gender discrimination. Defendant is therefore entitled to summary judgment on plaintiff's gender discrimination claims under Title VII and O.R.C. § 4112.

### 4. Retaliation

To prove a claim of retaliation, plaintiff must demonstrate that (1) she engaged in protected activity; (2) the exercise of her civil rights was known by defendant; (3) defendant thereafter took adverse employment action; and (4) a causal connection exists between the protected activity and the adverse employment action. ***Walborn v. Erie County Care Facility,*** 150 F.3d 584, 588-89 (6th Cir. 1998)(citing ***Wrenn v. Gould,*** 808 F.2d 493, 500 (6th Cir. 1987));

see also ***Thatcher v. Goodwill Industries of Akron,*** 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320 (1997). To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had plaintiff not engaged in protected activity. ***Nguyen v. City of Cleveland,*** 229 F.3d 559, 563 (6th Cir. 2000). Evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. ***Id.***

The Sixth Circuit has found that temporal proximity between the protected activity and the adverse action is not, in and of itself, sufficient to establish a causal connection. See , e.g., ***Cooper v. City of North Olmstead,*** 795 F.2d 1265 (6th Cir. 1986)). In ***Nguyen***, however, the Sixth Circuit indicated that there may be circumstances where temporal proximity alone would be sufficient to support an inference of a causal connection, although the Court noted that such circumstances were lacking in the case before it and gave no indication of what circumstances might suffice. 229 F.3d at 567.

Once plaintiff establishes a prima facie case of retaliation, the burden is on defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. ***Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,*** 783 F.2d 50, 54 (6th Cir. 1986).

In support of her retaliation claim, plaintiff alleges that she was terminated in retaliation for (1) notifying the company of her claims of sexual harassment and/or gender discrimination in the letter prepared by her counsel, (2) relating each of her specific factual allegations to Human Resources Director Seger, and (3) raising her complaints in a charge of discrimination filed with the EEOC in January 2001. Plaintiff argues that the close proximity in time between her

complaints of discrimination in counsel's October 13, 2000 letter/the EEOC charge and defendant's decision to terminate her employment creates an inference of a causal connection between the complaints and the termination.

The Court finds that plaintiff has come forward with sufficient evidence to avoid summary judgment on her retaliation claim. First, there is a factual issue as to whether the decision to terminate plaintiff's employment was made before or after she filed her EEOC charge. Second, the close temporal proximity between plaintiff's EEOC charge and her discharge in January, when considered in conjunction with the remaining evidence of record, raises a genuine issue of fact as to the existence of a causal connection between plaintiff's protected activity and her discharge. Third, although defendant has articulated legitimate, non-discriminatory reasons for plaintiff's discharge, i.e., that defendant learned of serious misconduct by plaintiff as supervisor, including demeaning and intimidating her employees and supplying them with alcohol during work hours, plaintiff has come forward with sufficient evidence to raise an issue as to whether the legitimate reasons proffered by defendant for her discharge are pretextual. Defendant apparently first expressed its concerns about plaintiff's job performance to her in a meeting which Goins had with plaintiff on October 11, 2000, at which time Goins outlined the improvements he expected plaintiff to make. Defendant never gave plaintiff the opportunity to address Goins' concerns and to make the improvements he expected of her. Instead, defendant terminated plaintiff's employment upon her return from medical leave. Under these circumstances, an issue of fact exists as to whether plaintiff's performance problems were actually a motivating factor in the termination decision.

Defendant's purported reliance on the alcohol incident involving underage telemarketers as a reason for plaintiff's termination is also suspect given evidence in the record which suggests

that defendant may have had a permissive attitude toward alcohol consumption on company premises and at company-sponsored events. Defendant's apparently lax attitude toward alcohol consumption, at least prior to Goins' promotion to General Manager, raises a question as to whether the incident involving plaintiff was a sufficient basis for her discharge. For these reasons, defendant is not entitled to summary judgment on plaintiff's retaliation claim.

### 5. Sexual harassment

Sexual harassment may take two forms: (1) hostile environment, and (2) tangible detrimental job action resulting from a refusal to submit to a supervisor's sexual demands (sometimes referred to a "quid pro quo" claim). *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998).

To establish a hostile environment claim, the plaintiff must prove harassment which is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67 (1986). A prima facie hostile environment case based on sex consists of a showing that (1) plaintiff is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her sex, (4) the harassment had the effect of unreasonably interfering with her work performance by creating a hostile, offensive, or intimidating work environment, and (5) there is employer liability. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).

The "based on sex" requirement of a hostile work environment claim includes sexually related remarks and conduct, as well as non-sexual conduct which "evinces anti-female animus, and therefore could be found to have contributed significantly to the hostile environment." *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir.1999)(citing *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 905 (1st Cir. 1988)). "*Any* unequal treatment of an employee *that*

*would not occur but for the employee's gender* may, if sufficiently severe or pervasive . . .

constitute a hostile environment in violation of Title VII." ***Id.*** (emphasis in original).

To satisfy the fourth prong, plaintiff must show that the conduct to which she was

subjected was severe or pervasive enough to create an environment that a reasonable person

would find hostile or abusive, and that she subjectively regarded the conduct as abusive. See

***Smith v. Leggett Wire Co.,*** 220 F.3d 752, 760 (6th Cir. 2000)(citing ***Jackson v. Quanex Corp.,***

191 F.3d 647, 658-59 (6th Cir. 1999)). In determining whether a reasonable person would consider

an environment hostile or abusive, a court must consider all of the circumstances, including the

frequency and severity of the conduct and whether the conduct is threatening or humiliating or a

mere offensive utterance, and whether the conduct unreasonably interfered with the employee's

work performance. ***Hafford,*** 183 F.3d at 512. "'[S]imple teasing', offhand comments, and

isolated incidents (unless extremely serious) will not amount to discriminatory changes in the

'terms and conditions of employment.'" ***Id.*** (citing ***Faragher v. City of Boca Raton,*** 524 U.S.

775,787-88 (1998)).

Where the plaintiff establishes that she suffered a tangible, detrimental job action based on

her refusal to submit to a sexual advance, the employment decision itself constitutes a change in

the terms and conditions of employment that is actionable under Title VII. ***Ellerth,*** 524 U.S. at

753-54. To establish such a "quid pro quo" claim, the plaintiff must prove the following: 1) that

she is a member of a protected class; 2) that she was subjected to unwelcome sexual harassment

in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of

was on the basis of sex; 4) that the plaintiff's submission to the unwelcome advances was an

express or implied condition for receiving job benefits or that the employee's refusal to submit to

the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of

employer liability. *Bowman v. Shawnee State University,* 220 F.3d 456, 461 (6th Cir. 2000)(citing *Kauffman v. Allied Signal, Inc., Autolite Div*., 970 F.2d 178, 186 (6th Cir.1992)).

Employer liability for co-worker harassment is based directly on the employer's conduct. *Id.* (citing *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 804 n. 11 (6th Cir. 1994)). An employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id.* at 804. Employer liability for supervisor harassment is vicarious. *Id.* (citing *Pierce,* 40 F.3d at 803). As the Supreme Court has explained:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Id.* (quoting *Faragher,* 524 U.S. at 807). This defense is not available where the harassment culminated in a tangible employment action such as discharge, demotion, or an undesirable reassignment. *Faragher,* 524 U.S. at 808.

### A. "Quid pro quo" harassment

In support of her claim of quid pro quo harassment, plaintiff alleges that Goins made a sexual advance to her at the end of 1999. Plaintiff describes the alleged sexual advance as follows: Ionics employees, including plaintiff and Goins, were staying in a hotel following a statewide Ionics party. In the early morning hours, plaintiff left her room and was walking down the hall to a vending machine to get a drink. As she was walking down the hall, Goins was backing out of the hotel room in which his wife and children were sleeping holding a bottle of wine and two glasses

and wearing what plaintiff took to be his pajamas. Goins asked plaintiff what she was doing, and she told him that she was going to get something to drink. Goins then walked across the hall, unlocked the door of the hotel room across the hall, sat down on the foot of the bed, and invited plaintiff to have a glass of wine with him. Plaintiff, who could see Goins from the hallway, declined his offer and went back to her room. (Plaintiff's depo., vol. I, pp. 55-56)

Plaintiff testified that following this incident, she felt that "there was a little bit of an unspoken animosity between us because of that." (Plaintiff's depo., vol. I, pg. 57). Plaintiff also alleges that after he became General Manager, Goins singled her out, demeaned her, disrespected her, and set her up to fail as soon as he had the management authority to do so. Plaintiffs alleges that she perceived a resistance by Goins. She complains that when he promoted Tina Wade to assistant phone room supervisor, he implied in an announcement that Wade was already performing plaintiff's position by stating that "Tina does everything around here." Plaintiff also complains that Goins required her to work evenings and Saturdays and refused her request to have Tuesday evenings off for no good reason, and she perceived that Goins considered her to be argumentative. (Plaintiff's depo., vol. I, pp. 36-37, 79-81). Plaintiff also asserts that Goins' involvement in the termination decision tainted that decision.

Accepting plaintiff's version of the hallway encounter as true, it is questionable whether a reasonable trier-of-fact could construe Goins' conduct as a sexual advance. The Court will nonetheless assume for purposes of the summary judgment motion that a reasonable trier-of-fact could conceivably construe Goins' conduct under the circumstances alleged by plaintiff as constituting a sexual advance, in which case plaintiff would be able to satisfy the first three elements of her claim. The issue, then, is whether plaintiff's act of declining the offer resulted in a tangible job detriment. The Court finds that plaintiff has failed to come forward with sufficient

evidence to establish this element of her claim. Plaintiff does not allege that she suffered a tangible job detriment immediately following the incident or even for several months thereafter. Rather, plaintiff alleges only that there was "a little bit of unspoken animosity" between her and Goins in the months following the incident. (Plaintiff's deposition, vol. I, pg. 57). Consistent with the law of this Circuit, neither the unspoken animosity which plaintiff sensed nor the specific instances of mistreatment to which plaintiff allegedly was subjected several months later when Goins became General Manager constitute a tangible job detriment. Moreover, there is no evidence which would permit a rational juror to conclude that plaintiff's rebuke of Goins' alleged sexual advance led to her termination over a year later. For these reasons, defendant is entitled to summary judgment on plaintiff's "quid pro quo" claim.

**B. Hostile environment**

The Court finds that plaintiff has not come forward with sufficient evidence to create a genuine issue for trial on her hostile environment claim. In her recitation of the facts, plaintiff complains that Goins made repeated sexual comments and advances to her. She lists the incidents as follows: (1) Prior to July 2000, while Goins was the Assistant General Manager, Goins told plaintiff as she walked past him that "her 'ass' looked a little better since she put some weight on" (Plaintiff depo., vol. I, p. 54); (2) in 1999, Goins told plaintiff following a sales promotion that he had not brought plaintiff there to talk but that he was hoping the man to whom they made the sales pitch would like the way plaintiff looked (Plaintiff depo., vol. I, pp. 67-70); (3) during that same year, Goins summoned plaintiff to his office, flipped through a swimsuit magazine, and made comments to plaintiff such as, "You know, she doesn't have anything on you" (Plaintiff's depo., vol. I, p. 52); and (4) Goins' offer of a glass of wine to plaintiff in the hotel.

Despite including these incidents in the recitation of facts, plaintiff does not refer to these

23

four incidents in her argument in support of her hostile environment claim. Instead, she bases her hostile environment claim on allegations that Goins set her up to fail, disrespected her in front of staff and colleagues, undermined her authority, laughed at her behind her back, and resisted her need for leave. (Plaintiff's opposing memorandum, p. 29). Plaintiff argues that the fact that this alleged retaliatory conduct was not itself sex-based does not defeat the existence of a hostile environment claim based on sex, and she seems to suggest that Goins acted as he did toward plaintiff because of her gender.

Plaintiff has come forward with sufficient evidence to satisfy the first three prongs of a prima facie case of hostile environment based on sexual harassment. She has not, however, come forward with evidence to establish the fourth prong. Initially, the Court finds that while it is true that non-sexual conduct may fulfill the "based on sex" requirement of a hostile environment claim where the conduct "evinces anti-female animus," plaintiff has not pointed to any non-sexual conduct by Goins or comments by Goins which could reasonably be construed as evincing an anti-female animus. Plaintiff has not produced any other evidence to show that Goins mistreated her because she is a female.

Furthermore, plaintiff has not come forward with evidence to show that the four discrete incidents set forth above which could possibly be construed as sex-related were so severe and pervasive as to create an environment that a reasonable person would find hostile or abusive. Although some of Goins' alleged behavior could be characterized as offensive, the incidents were isolated and none was considerably serious. Moreover, plaintiff has not come forward with evidence to show that the incidents had the effect of unreasonably interfering with her job performance. Plaintiff asserts only that the incidents generated some discomfort and created "a little bit of unspoken animosity" between her and Goins. She continued working for many months

between the last incident and the time Goins became General Manager without alleging any significant impact on her job performance during that time period and without complaining about the alleged harassment. In fact, plaintiff did not complain of the alleged sexually harassing behavior until October 2000, nearly nine months after the last incident, despite the fact that defendant had a policy in place to prevent and correct promptly any harassing behavior. For these reasons, defendant is entitled to summary judgment on plaintiff's hostile environment claim.

### 6. FMLA

The FMLA entitles an eligible employee to as many as twelve weeks of leave during any twelve-month period if she has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In an FMLA case relying upon indirect evidence, the three-step *McDonnell Douglas* paradigm applies. The plaintiff must first prove a prima facie case of discrimination. A plaintiff may establish a prima facie case of retaliatory discharge under the FMLA by showing that (1) she availed herself of a protected right under the FMLA, (2) she was adversely affected by an employment decision, and (3) there is a causal connection between her exercise of a right under the FMLA and the adverse employment decision. See *Skrjanc v. Great Lakes Power Service Co.,* 272 F.3d 309, 314 (6th Cir. 2001)(citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990)). The burden then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* at 315. If the defendant articulates such a reason, then the plaintiff has the burden of showing that the articulated reason is a pretext for discrimination. *Id.*

Plaintiff has established that she availed herself of a protected right by taking leave under the FMLA. Plaintiff has also shown that defendant took an adverse employment action against her by terminating her employment at the conclusion of her FMLA leave. The fact that defendant

investigated alleged misconduct by plaintiff during her FMLA leave and decided to terminate her employment after it knew of her FMLA status, coupled with the remaining circumstances surrounding plaintiff's termination, raise an issue as to whether there was a causal connection between plaintiff's FMLA status and her discharge and whether the reasons given by defendant for her discharge are pretextual. Accordingly, defendant is not entitled to summary judgment on plaintiff's FMLA claim.

### 7. Ohio public policy

The Ohio Supreme Court has recognized an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which contravenes public policy expressed in statutory enactments and other sources. ***Painter v. Graley,*** 70 Ohio St.3d 377, syll. ¶ 2, 639 N.E.2d 51 (1994). In such circumstances, the terminated employee may bring a tort action for wrongful discharge in violation of public policy.

Ohio does not recognize a public policy claim when the cause of action is based solely on discharge in violation of the FMLA, so that plaintiff cannot pursue a public policy claim based on defendant's alleged FMLA violation. See ***Wiles v. Medina Auto Parts,*** 96 Ohio St.3d 240, 246, 773 N.E.2d 526, 533 (2002). Plaintiff also may not pursue a public policy claim based on alleged gender discrimination and sexual harassment since she has failed to come forward with evidence which shows a genuine issue of material fact as to those claims. Plaintiff may pursue her public policy claim to the extent it is premised on her termination in alleged retaliation for her complaints of sexual harassment and gender discrimination.

## VI. Conclusion

In accordance with the foregoing, defendant's motion to strike affidavits is **DENIED.**

Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. Judgment

is **GRANTED** in favor of defendant on plaintiff's claims of sexual harassment and gender

discrimination and on her public policy claim to the extent it is premised on alleged sexual

harassment, gender discrimination, and an FMLA violation. Those claims are hereby

**DISMISSED.** The motion for summary judgment is **DENIED** as to plaintiff's remaining claims,

and the case will proceed to trial on those claims in accordance with the schedule established by

the Court.

      **IT IS SO ORDERED.**


                              _____
                                   S/Herman J. Weber
                                  HERMAN J. WEBER
              SENIOR JUDGE, UNITED STATES DISTRICT COURT

H:\01-654msj