Service: Get by LEXSEE®
Citation: 267 F. Supp.2d 823

*267 F. Supp. 2d 823, \*; 2003 U.S. Dist. LEXIS 10349, \*\**

HENRY BEATTY, Plaintiff vs. UNITED PARCEL SERVICE, Defendant.

Case No. C-3-00-367

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, WESTERN DIVISION

267 F. Supp. 2d 823; 2003 U.S. Dist. LEXIS 10349

April 22, 2003, Decided

**DISPOSITION:** [\*\*1] Defendant's motion for summary judgment sustained. Judgment ordered entered in favor of the defendant and against the plaintiff on all claims.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff former employee sued defendant former employer alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and Ohio Rev. Code Ann. ch. 4112, as well as negligent entrustment of supervisors and negligent and intentional infliction of emotional distress. The employer moved for summary judgment.

**OVERVIEW:** The employer claimed that the employee's state claims were preempted by 29 U.S.C.S. § 185(a) and were barred by Ohio Rev. Code Ann. § 4112.14(C), and that the employee's remaining claims were without merit. The court initially held that the employee's state claims were not preempted by 29 U.S.C.S. § 185(a) because the employee's state discrimination and retaliation claims related to facts that were independent of the parties' collective bargaining agreement, and the employee's remaining state law claims all turned on the merits of his state discrimination and retaliation claims. The court then held that the employee was unable to make out a prima facie case of race discrimination because he failed to show that he was similarly situated to other employees, not within the protected class, who were treated differently than he under similar facts; that the employee was unable to make out a prima facie case of retaliation because he failed to show how his termination was proximately caused by his filing of a discrimination charge two years earlier; and that his remaining claims failed because they were derivative of his discrimination and retaliation claims.

**OUTCOME:** Summary judgment was granted for the employer.

**CORE TERMS:** retaliation, shipper, preempted, terminated, summary judgment, collective bargaining agreement, unpaid, personal check, common law, deposition, manager, grievance, packages, genuine issue of material fact, negligent entrustment, discrimination claim, reimburse, customer, intentional infliction of emotional distress, infliction of emotional distress, similarly situated, prima facie case, nonmoving party, protected class, demonstrating, adduce, answers to interrogatories, moving party, state law, discriminated

**LexisNexis (TM) HEADNOTES - Core Concepts -** ◆ Hide Concepts

Civil Procedure > Summary Judgment > Summary Judgment Standard
**HN1** ✦ For purposes of ruling on a defendant's motion for summary judgment, the court

NOV 21 2003 16:41 FR                                         TO 13302525283        P.02/16
Get a Document - by Citation - 267 F. Supp. 2d 823
Case 1:01-cv-00654-HSW-PJG   Document 61-8   Filed 11/21/2003   Page 2 of 15

will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the plaintiff, who is the nonmoving party.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN2± Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN3± On a motion for summary judgment, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party who must set forth specific facts showing that there is a genuine issue for trial.  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN4± On a motion for summary judgment, once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial. A party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed. R. Civ. P. 50).  More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof
HN5± On a motion for summary judgment, once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to simply show that there is some metaphysical doubt as to the material facts. Rather, Fed. R. Civ. P. 56(e) requires the nonmoving party to go beyond the unverified pleadings and present some type of evidentiary material in support of its position.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN6± Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment shall be denied if there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.  More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
HN7± On a motion for summary judgment, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder.  More Like This Headnote

Civil Procedure > Summary Judgment > Supporting Papers & Affidavits
Civil Procedure > Summary Judgment > Summary Judgment Standard
HN8± In ruling on a motion for summary judgment (in other words, in determining

NOV 21 2003 16:42 FR                                TO 13302525283    P.03/16
Get a Document - by Citation - 267 F. Supp. 2d 823
Case 1:01-cv-00654-HJW    Document 61-8    Filed 11/21/2003    Page 3 of 15

whether there is a genuine issue of material fact), a district court is not obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption
HN9± 29 U.S.C.S. § 185(a) grants the federal district courts subject matter jurisdiction over suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in the Labor Management Relations Act.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption
HN10± The United States Supreme Court holds that if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are states) is pre-empted and federal labor-law principles, necessarily uniform throughout the nation, must be employed to resolve the dispute.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption
HN11± The linchpin to whether a state law claim is preempted by § 301 (29 U.S.C.S. § 185(a)) of the Labor Management Relations Act is whether its resolution requires the interpretation of a collective bargaining agreement which governs the conduct of the respective parties. The United States Court of Appeals for the Sixth Circuit holds that a court must also determine whether the right claimed by the plaintiff is created by the collective bargaining agreement. If either question can be answered in the affirmative, then the state law claim is preempted.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption
HN12± For federal preemption purposes, the fact that an employee could have challenged her discharge under the terms of her collective bargaining agreement does not preempt her right to challenge it under independent laws created by the state.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Federal Preemption
HN13± For federal preemption purposes, resolution of the state-law claim does not require construing the collective-bargaining agreement.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Protected Activity
HN14± It is not necessary to pursue a union grievance where the state also creates legal rights with respect to certain conduct.  More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration
Labor & Employment Law > Discrimination > Age Discrimination
Labor & Employment Law > Discrimination > Actionable Discrimination
HN15± See Ohio Rev. Code Ann. § 4112.14(C).

Labor & Employment Law > Discrimination > Age Discrimination > Coverage & Definitions
Labor & Employment Law > Discrimination > Actionable Discrimination
HN16± In general, Ohio Rev. Code Ann. § 4112.14(B) provides a cause of action for age

discrimination, and Ohio Rev. Code Ann. §§ 4112.01 to 4112.11 provide remedies for a broader range of discrimination. More Like This Headnote

Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration
Labor & Employment Law > Wrongful Termination > Remedies
HN17± Any claim for wrongful discharge under Ohio Rev. Code Ann. ch. 4112, specifically, Ohio Rev. Code Ann. § 4112.02, is barred if the plaintiff has the option of arguing the issue before a labor grievance panel. More Like This Headnote

Labor & Employment Law > Discrimination > Age Discrimination > Remedies
HN18± Ohio Rev. Code Ann. § 4112.14(C) applies exclusively to age discrimination claims, and its reference to any remedies available pursuant to Ohio Rev. Code Ann. §§ 4112.01 to 4112.11 is a reference to other remedies for age discrimination only, set forth within that range of provisions, not remedies for other forms of discrimination. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII
HN19± Where a plaintiff has not adduced direct evidence of discrimination, the court's first task is to determine whether he can set forth a prima facie case of discrimination. More Like This Headnote

Civil Procedure > Summary Judgment > Summary Judgment Standard
Labor & Employment Law > Discrimination > Title VII
HN20± To demonstrate a prima facie case of discrimination in the employment termination context, a plaintiff must demonstrate (1) his membership in a protected class; (2) that he was terminated; (3) that he was qualified for the position; and (4) that he was treated differently than similarly situated employees outside the protected class. As always in the summary judgment context, the court views the facts, and all reasonable inferences which can be drawn therefrom, in a light most favorable to the nonmoving party in determining whether genuine issues exist as to all of the prima facie elements. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis
HN21± It is important for the plaintiff to demonstrate disparate treatment by the same supervisor or manager, where it is the conduct of that supervisor or manager that is the source of the plaintiff's complaint. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
HN22± Claims for retaliation must be analyzed pursuant to the McDonnell Douglas standard. Thus, the court must first determine whether the plaintiff can make out a prima facie claim, which requires a showing that: (1) he engaged in activity protected by Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq.; (2) his exercise of this right was known by the defendant; (3) that, thereafter, the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. More Like This Headnote

Labor & Employment Law > Discrimination > Retaliation
HN23± The fact that a plaintiff was terminated two years after filing a discrimination claim does not, by itself, provide a basis for inferring retaliation. More Like This Headnote

**COUNSEL:** For HENRY A BEATTY, plaintiff: Aaron G Durden, Dayton, OH.

For UNITED PARCEL SERVICE, defendant: Henry Lawson Walker, II, Katherine Cook Morgan, Frost Brown Todd LLC, Cincinnati, OH.

For UNITED PARCEL SERVICE, defendant: Julie C Foster, Brown Todd & Heyburn, Winston E Miller, Frost Brown & Todd, Louisville, KY.

For WILLIAM M SLONAKER, mediator: William Martin Slonaker, Kettering, OH.

**JUDGES:** WALTER HERBERT RICE, CHIEF JUDGE, UNITED STATES DISTRICT COURT.

**OPINIONBY:** WALTER HERBERT RICE

**OPINION:** [*824] DECISION AND ENTRY SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 24); JUDGMENT TO ENTER IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

In the case at bar, Plaintiff Henry Beatty, an African-American, is suing his former employer, Defendant United Parcel Service ("UPS"), on several grounds, all stemming from his allegedly wrongful discharge. In his First Cause of Action, Beatty alleges that he was terminated in retaliation for filing a claim of discrimination with the Equal Employment Opportunity Commission [**2] ("EEOC"), n1 in violation of [*825] Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., ("Title VII") and Chapter 4112 of the Ohio Revised Code ("Chapter 4112"). n2 In his Second Cause of Action, Beatty actually pleads three distinct claims, all arising under the common law of the State of Ohio: negligent entrustment of supervisors; n3 negligent infliction of emotional distress; and intentional infliction of emotional distress. In his Third Cause of Action, Beatty alleges that he was discriminated against on the basis of his race, in violation of Title VII and Chapter 4112. Finally, in his Fourth Cause of Action, he does not add a free-standing substantive claim, alleging only that UPS acted with malice or reckless indifference to his rights.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Complaint (Doc. # 1) states that the claim was filed with the Ohio Civil Rights Commission, but discovery has demonstrated that it was actually filed with the EEOC. The issue is not material to the case.

n2 The First Cause of Action also alleges harassment, but counsel for Beatty clarified at his client's deposition that the claim was not based on a harassment or "hostile work environment" theory. (Beatty Depo. at 89.) In any event, the facts do not support such a claim. See, e.g., National R.R. Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2070-71 (2002). [**3]

n3 The Second Cause of Action also mentions negligent hiring and retention, but counsel for Beatty clarified at his client's deposition that the claim was only for negligent entrustment. (Beatty Depo. at 92.) The inclusion of these other theories would not change the result herein.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

For the reasons set forth below, the Court finds that UPS is entitled to judgment as a matter

of law. It will therefore sustain its Motion for Summary Judgment (Doc. # 24).

I. Factual Background n4

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 HN1⊤For purposes of ruling on the Defendant's Motion for Summary Judgment, the Court will construe the facts, and all reasonable inferences drawn therefrom, in the light most favorable to the Plaintiff, who is the non-moving party.

- - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Beatty began working for UPS in 1970. (Beatty Depo. at 15.) He was discharged in September of 1998. (Id. at 42.) As a union employee, the terms of his employment were defined in the collective bargaining agreement [**4] ("CBA") between UPS and his local union, Teamsters Local 957. (Wood Depo. at 9-10; n5 Doc. # 24 at Ex. A.) At the time of his discharge, Beatty was working in a clerical position at the company's Dayton facility. (Beatty Depo. at 29.) The stated reason for his discharge was his failure to abide by a decision rendered by the grievance committee responsible for resolving disputes between labor and management in Ohio, the Ohio State Committee ("State Committee"). (Id. at Ex. 12.) The referenced decision concerned his obligation, as determined by the State Committee, to reimburse UPS for funds lost by the company on account of his having accepted a personal check from a customer, in violation of a known policy, which was returned by the company's bank due to insufficient funds. (Id. at Ex. 8.) Notwithstanding the State Committee's decision, Beatty refused to reimburse UPS.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n5 Ellis Wood is a business representative for Teamsters Local 957. (Wood Depo. at 9.)

- - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Generally, where UPS holds items for customer pickup, [**5] and the shipper of the item has specified cash on delivery ("C.O.D."), it is the written policy at UPS to follow the shipper's instructions on what methods of payment are acceptable. (Beatty Depo. at Ex. 1.) Where no such instructions are included, the employee collecting payment from the customer is permitted to accept a personal check under certain circumstances, but in that event, the employee is responsible for verifying that the check appears, on its face, to [*826] be a lawful and acceptable instrument of payment. (Id.) In the event the check is returned unpaid by the bank, UPS is obligated by the terms of the CBA to use reasonable means to collect the funds owed (Doc. # 24 at Ex. A, at Bates # 01411), but if it is unsuccessful in its efforts, the employee who first accepted the check is obligated to reimburse the unpaid funds. (Beatty Depo. at 46; Doc. # 24 at Ex. A, at Bates # s 01409-01411.) Beatty was aware of these policies. (Beatty Depo. at 46.) Any disputes concerning such matters must be addressed via the grievance procedures established by the CBA, the ultimate arbiter of which is the State Committee. (Doc. # 24 at Ex. A, at Bates # s 01477-01479, 01495.)

On October 10, 1997, a [**6] regular UPS customer by the name of Thomas Moon presented Beatty with a personal check, made out to the shipper, in exchange for two C.O.D. items being held for him at the UPS facility in Dayton, where Beatty was working as a counter clerk. (Beatty Depo. at 48-49.) On that day, Beatty was covering the shift of another counter clerk, Paul Kerns. (Kerns Depo. at 13.) One of the C.O.D. items Moon was picking

NOV 21 2003 16:43 FR    TO 13302525283    P.07/16
Get a Document-by Citation-654 F. Supp. 2d 823
Case 1:01-cv-00654-HJW  Document 61-8   Filed 11/21/2003    Page 7 of 15

up, for $ 519.40, required cash payment, whereas the other, for $ 1003, did not specify a form of payment. (Beatty Depo. at Exs. 2 & 3.) At first, Beatty informed Moon that he could not accept a check for the "cash only" item, but at Moon's request, Beatty telephoned the office of management, seeking approval to accept the check, which was granted, albeit by an individual whom Beatty is presently unable to identify. (Id. at 50-52 & Ex. 4.) Being in receipt of Moon's check, UPS, per its policy with shippers of C.O.D. items, remitted equivalent funds of its own to the shipper of Moon's items, and presented his check to its own bank for payment. (Davis Aff., Doc. # 24 at Ex. B, PP3-5 and attachments thereto.) n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 Mark Davis is responsible for C.O.D. issues for UPS. (Davis Aff. P1.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**7]

In December of 1997, Beatty was informed by Todd Coke and Gilbert Fleek, UPS managers, that Moon's check had not cleared, and that he (Beatty) would be held responsible for the full amount. (Beatty Depo. at 52-53.) After further discussions, Fleek conceded that Beatty would not be responsible for the $ 1003 item, given that the shipper had not specified that only cash be accepted for that item. (Id. at 53.) Beatty filed a grievance against UPS to dispute the company's claim that he was liable for the remaining portion of the unpaid funds, given the fact that a supervisor had approved his acceptance of Moon's check. (Fleek Aff., Doc. # 24 at Ex. D, P2.) In April of 1998, the State Committee ruled in favor of UPS. (Id. P5; Beatty Depo. at Ex. 8.) Beatty did not attend the hearing at which that decision was rendered. (Fleek Aff. P2; Beatty Depo. at 64, 65.)

On a separate occasion, some time in the spring of 1998, while Beatty was still disputing his personal liability to UPS, Kerns also accepted a personal check from Moon, where the C.O.D. instructions had specified that only a company check (from Moon's company) was to be accepted. (Kerns Depo. at 7-8 & Ex. 2.) Kerns was very [**8] busy at the time he accepted Moon's personal check, and failed to realize his mistake until after Moon had left with his packages. (Id. at 8.) After he realized what he had done, he informed three managers, Coke, Gary Faucett and Tracy Brown, that he intended to hold the check until the next time Moon appeared to pick up packages, n7 at which point he would inform Moon that all of his packages would [*827] be withheld unless and until he provided proper payment to rectify the situation. (Id. at 8-9.) Kerns' proposed remedy was not a written policy of UPS, and the managers did not expressly approve or disapprove of it. (Id. at 8-9, 13-15, 17.) As it turned out, upon his next visit, Moon complied with Kerns' request, and obtained a cashier's check, which he presented to UPS's satisfaction. (Id. at 9.) At least three other Caucasian UPS employees have been required to reimburse UPS for losses due to circumstances similar to Beatty's. (Brown Aff., Doc. # 24 at Ex. E, P4 & attachments.)

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 Kerns surmised that Moon was a twice-a-week customer. (Kerns Depo. at 8.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**9]

After learning of the means by which Kerns resolved his issue with Moon, Beatty asked Fleek for approval to pursue a similar means of collecting the unpaid funds owing to his transaction with Moon the previous October. (Beatty Depo. at 57-58.) Specifically, Beatty suggested withholding future packages intended for Moon until he made good on the outstanding funds.

(Id.) Fleek denied Beatty permission to rectify the collections issue in such a manner. (Id. at 58.) Because Beatty continued to insist that he should not be held responsible for the lost funds, Fleek informed him that UPS, in order to enforce the State Committee's decision, would start making periodic deductions from his paycheck until the company had recouped its loss. (Fleek Aff. PP6 & 7; Beatty Depo. at 53-55.) After UPS began to withhold $ 50 per pay period from his paycheck, over his objection, Beatty filed another grievance, but the State Committee remanded the issue to the parties with the direction that they should mutually agree to the means by which Beatty should repay the unpaid funds. (Fleek Aff. P7.) On August 17, 1998, Fleek notified Beatty in writing that he would be given until August 21 to decide [**10] whether to repay the unpaid funds or be terminated. (Beatty Depo. at 68 & Ex. 9.)

In response to Fleek's letter, Beatty filed another grievance, contending that Moon had settled his account with the shipper of the items he had collected in October of 1997, such that the issue of unpaid funds was moot, and requesting that the letter be rescinded. (Id. at 68-69 & Ex. 10.) In support of his claim, he attached documents which he had been given by Moon, indicating that Moon had submitted a bank check to the shipper, dated October 13, 1997, for $ 2249.55. (Id. at 68-69 & Ex. 11.) The documents indicated that the bank check Moon gave the shipper was in consideration for three items, one of which was for $ 1003, and a second of which was for $ 519.40, the exact dollar amounts for which Moon had written out the personal check previously accepted by Beatty. (Id. at Ex. 11.) Fleek examined these documents, but determined on his own that they did not prove that Moon had remitted the proper amount to the shipper, and that, in any event, they did not change the fact that UPS itself was still out the funds, given that it had already remitted same to the shipper. (Fleek Aff. P8.) On September 3, 1998, Fleek [**11] notified Beatty in writing that he had been terminated. (Id. P9; Beatty Depo. at Ex. 12.) Subsequently, the State Committee ruled in favor of UPS on Beatty's grievance, and in so doing, upheld the validity of his discharge. (Beatty Depo. at 79-80 & Ex. 15.) n8

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 In Beatty's favor, the State Committee ordered UPS to refund Beatty $ 150 which had been withdrawn from his paychecks per Fleek's earlier decision to recoup UPS's loss by such means.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The sole basis for Beatty's claim that UPS discriminated against him on the basis of race is the fact that Fleek did not permit him to withhold packages shipped [*828] to Moon as a means of coercing Moon to remit proper payment to UPS for the unpaid funds relating to the items he picked up in October of 1997, even though Kerns was given tacit approval in the spring of 1998 to withhold packages shipped to Moon in order to coerce him to substitute a proper form of payment for the personal check he had given Kerns several days earlier. (Beatty Depo. at 81-82.) His retaliation [**12] claim relates to a complaint filed with the EEOC in 1996, but he stated at his deposition that he had no facts to demonstrate a causative link between the filing of his EEOC claim and his subsequent discharge. (Id. at 89-91.) His three common law claims, for negligent entrustment, negligent infliction of emotional distress, and intentional infliction of emotional distress, all derive from the same allegedly discriminatory and retaliatory conduct. (Doc. # 27 at 17-19.)

UPS moves for summary judgment on several bases. First, it argues that all of Beatty's state law claims are preempted by § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a) ("LMRA"). Second, it argues that Beatty's state discrimination and retaliation claims in particular are barred by Ohio Rev. Code § 4112.14(C). Third, it argues that his federal

discrimination and retaliation claims, and their state counterparts, to the extent its other defenses are without merit, must fail on their merits. Fourth, it argues that his common law claims, to the extent they are not otherwise preempted by the LMRA, must fall on their merits.

II. Standards Governing Motions [**13] for Summary Judgment

HN2⊕Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). Of course, HN3⊕the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)). The burden then shifts [**14] to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986) (quoting Fed. R. Civ. P. 56(e)). Thus, HN4⊕"once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995). Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law, Fed. R. Civ. P. 50). Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

HN5⊕ [*829] Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to [**15] the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986); see also Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. HN6⊕Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment shall be denied "if there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) [**16] (citation omitted). Of course, HN7⊕in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the parties present conflicting

NOV 21 2003 16:45 FR                          TO 13302525283     P.10/16
Get a Document - by Citation - 889 F Supp 2d 823
Case 1:01-cv-00654-JW Document 61-8    Filed 11/21/2003    Page 10 of 15

evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. HN8⇑In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Information Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir.), cert. denied, 506 U.S. 832, 121 L. Ed. 2d 59, 113 S. Ct. 98 (1992) [**17] ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ..."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

III. Analysis

The Court is not persuaded by UPS's argument that Beatty's state law claims are preempted by the LMRA, and it need not determine whether the state-law-based discrimination claims in particular are barred by Ohio Rev. Code § 4112.14(C). Because none of his claims can survive on its merits, summary judgment shall be granted.

Regarding the LMRA and preemption, § 301(a), codified at HN9⇑29 U.S.C. § 185(a), grants the federal district courts subject matter jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce [*830] as defined in [the LMRA] ...." HN10⇑The Supreme Court [**18] has held that "if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles - necessarily uniform throughout the Nation - must be employed to resolve the dispute." Lingle v. Norge Division of Magic Chef, Inc., 486 U.S. 399, 405-06, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988). HN11⇑The linchpin to whether a state law claim is preempted by § 301 is whether its resolution requires the interpretation of a collective bargaining agreement which governs the conduct of the respective parties. See id. at 407, 409-10; DeCoe v. General Motors Corp., 32 F.3d 212, 216 (6th Cir. 1994). The Sixth Circuit has held that a court must also determine whether the right claimed by the plaintiff is created by the collective bargaining agreement. See DeCoe, 32 F.3d at 216. If either question can be answered in the affirmative, then the state law claim is preempted. See id.

The second question is readily answered in [**19] this case: Beatty invokes rights created by Chapter 4112 of the Ohio Revised Code and the common law of Ohio, not by the CBA. Regarding the principal question, UPS contends that the Court cannot resolve Beatty's state law claims without interpreting the terms of the CBA, in which the terms of his employment and dispute resolution procedures were set forth, and that, therefore, they are preempted by § 301. The Court disagrees. In Lingle, the plaintiff had filed a state law claim for retaliatory discharge, alleging that she had been terminated in retaliation for having filed a workers' compensation claim. Her employer, the defendant, argued that she was required to challenge her discharge per the terms of her collective bargaining agreement, which barred discharge other than for cause. 486 U.S. at 402. The lower courts agreed with the employer, and ruled that her claim was preempted by § 301(a). The Supreme Court reversed, finding that the question of whether she had been terminated in retaliation for filing a workers' compensation claim did not turn on an interpretation of her collective bargaining agreement with the employer. Id. at 407. HN12⇑The fact [**20] that she could have challenged her discharge

NOV 21 2003 16:45 FR                          TO 13302525283        P.11/16
Get a Document - by Citation - 247 F. Supp. 2d 823
Case 1:01-cv-00654-JW   Document 61-8   Filed 11/21/2003   Page 11 of 15

under the terms of her collective bargaining agreement did not preempt her right to challenge it under independent laws created by the state. Id. at 408-10. Lingle was followed by the Sixth Circuit in Smolarek v. Chrysler Corp., 879 F.2d 1326, 1331 (6th Cir.) (en banc), cert. denied, 493 U.S. 992, 107 L. Ed. 2d 537, 110 S. Ct. 539 (1989), a retaliation case involving similar facts. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Whereas in Lingle the retaliation claim was brought pursuant to Illinois common law, the retaliation claim in Smolarek was brought under Michigan's disability discrimination statute. In both cases, the plaintiffs claimed that they were retaliated against because they filed or expressed an intent to file a workers' compensation claim.

- - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Lingle and Smolarek control as to Beatty's retaliation claim under Chapter 4112 of the Ohio Revised Code. The CBA governing the terms of Beatty's employment no doubt gave UPS the [**21] right to terminate him for the reasons it has proffered, but that merely provides it with a theory of defense; it does not preclude Beatty from adducing evidence that its rationale is a pretext, and that he was terminated for a wholly unrelated (and unlawful) reason, to wit: because he filed an EEOC claim in 1996.

For the same reason, Beatty's discrimination claim is not preempted by § 301. [*831] In Smolarek, in addition to the retaliation claim, one of the plaintiffs alleged that the defendant employer, Chrysler, had discriminated against him by refusing to reinstate him due to his perceived health condition. 879 F.2d at 1328. Chrysler argued that the court could not determine whether its actions were discriminatory without referring to its rights and the plaintiff's rights as set forth in the governing collective bargaining agreement. Id. at 1331-32. The Sixth Circuit, sitting en banc, disagreed with Chrysler's reasoning, pointing out that while Chrysler had every right to argue that it acted lawfully, consistent with its rights under the relevant collective bargaining agreement, that did not prevent the plaintiff from adducing facts demonstrating [**22] that Chrysler acted for unlawful purposes, wholly independent of how it was entitled to act under the collective bargaining agreement.

> To defend against the HCRA charge, Chrysler must show that its actions were motivated by some factor other than Fleming's handicap. We recognize that Chrysler is likely to assert as its defense to Fleming's claim that it based its actions on the provisions of the labor agreement regarding reinstatement and accommodation. Even this defense, however, does not require a finding of preemption. In order to resolve the HCRA claim in light of this defense, a court need only decide whether Chrysler took actions adverse to Fleming because of his handicap or rather solely because Chrysler felt bound by the union agreement to take the actions or for some other legitimate reason. It is not necessary to decide at the outset whether or not Chrysler's interpretation of the agreement is correct as a matter of federal labor law. The question is a factual one: What was Chrysler's motivation? Under Lingle, therefore, Fleming's HCRA claim is sufficiently "independent" of the collective bargaining agreement to escape § 301 preemption, for HN13 "resolution of [**23] the state-law claim does not require construing the collective bargaining agreement." 108 S. Ct. at 1882 (emphasis added) (footnote omitted). Accordingly, we conclude under our understanding of Lingle that the district court erred in finding Fleming's HCRA claim preempted by §§ 301.

Id. at 1334 (emphasis in original).

The Court would agree with UPS that if Beatty's claim turned on challenging UPS's right to take certain actions per the terms of the CBA, it would be preempted by § 301(a), but that is not what he is contending. He is not disputing that UPS has a right to require employees to reimburse the company for unpaid funds under certain circumstances. He is not even disputing that UPS had the right to terminate him for failing to comply with the terms of the State Committee's decision of April, 1998. Instead, his discrimination claim, as with his retaliation claim, relates to facts that are independent of the CBA, and which, if they exist, would demonstrate that UPS's purported lawful reason for terminating him was a pretext. In particular, his discrimination claim turns on whether he was terminated because of his race. Whether this claim is [**24] meritorious depends on facts unrelated to UPS's rights under the CBA. n10 The only possible way [*832] that his discrimination claim would require the Court to interpret the CBA would be if UPS were to argue that it had the right under the CBA to terminate an employee because of his race. (Likewise, his retaliation claim would require the Court to interpret the CBA only if UPS argued that it had the right thereunder to terminate an employee for filing an EEOC claim.) For obvious reasons, UPS does not raise any such argument. n11 Finally, because his three common law claims, for negligent entrustment, negligent infliction of emotional distress, and intentional infliction of emotional distress, all turn on the merits of his discrimination and retaliation claims, these claims, too, are not preempted. See, e.g., Williams v. York Int'l Corp., 63 Fed. Appx. 808, 2003 U.S. App. LEXIS 6583, 2003 WL 1819637, at *4 (6th Cir. April 3, 2003).

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n10 UPS points out that Beatty has expressed his intent to call certain former employees to testify on the policy at UPS, regarding efforts typically used to collect debts arising after an employee accepts a bad check, before the company seeks reimbursement from the employee. (Doc. # 29 at 6.) There is nothing significant about this, as the "policy" or "practice" or "custom" at UPS does not necessarily stem from the CBA. Beatty's discrimination claim turns on UPS's even-handedness, and the CBA is simply not relevant to the question of whether UPS treated minority employees differently than majority employees as a matter of practice or custom. UPS also points out that Beatty did not raise a discrimination claim in front of the State Committee. (Doc. # 24 at 7.) As Lingle makes clear, however, HN14 it is not necessary to pursue a union grievance where the State also creates legal rights with respect to certain conduct. Accord Hawaiian Airlines, Inc. v. Norris, 512 U.S. 246, 266, 129 L. Ed. 2d 203, 114 S. Ct. 2239 (1994). [**25]

n11 UPS cites Beckwith v. Diesel Tech. Co., 2000 U.S. App. LEXIS 14074, 2000 WL 761808 (6th Cir. May 30, 2000), for the proposition that claims of retaliation are preempted if they require the court to interpret a collective bargaining agreement in order to determine whether an employer's actions were legitimate thereunder. This Court agrees that Beckwith can be read to support such a proposition, but with all due respect, that unpublished opinion appears to be in tension with binding Supreme Court and Sixth Circuit precedent, see Lingle, supra; Norris, supra; Smolarek (en banc), supra, and cannot be accepted herein as controlling. Beckwith focused on the employer's defense. Lingle, Norris and Smolarek make it clear, however, that the focus of a court's preemption analysis should remain on the plaintiff's theory, not the defendant's.

- - - - - - - - - - - - - - End Footnotes - - - - - - - - - - - - - -

Accordingly, the Court finds that Beatty has properly pled statutory claims under Chapter 4112, for discrimination and retaliation, and common law claims for negligent entrustment, negligent infliction of emotional distress, and [**26] intentional infliction of emotional distress, and that these claims are not preempted by § 301(a) of the LMRA.

Regarding Ohio Rev. Code § 4112.14(C), that section states:

> HN15 The cause of action described in division (B) of this section and any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code shall not be available in the case of discharges where the employee has ... the opportunity to arbitrate the discharge or where a discharge has been arbitrated and has been found to be for just cause.

HN16 In general, § 4112.14(B) provides a cause of action for age discrimination, and §§ 4112.01 to 4112.11 provide remedies for a broader range of discrimination. In this case, UPS argues that the State Committee's decision of September 15, 1998, at which Beatty's discharge was upheld, is tantamount to a decision rendered by an arbitrator, such that Beatty's discrimination and retaliation claims under Chapter 4112 of the Ohio Revised Code are now barred.

The Ohio Courts of Appeals have split on this issue. One appellate court, cited by UPS, has held that HN17 any claim for wrongful discharge under Chapter 4112, specifically, § 4112.02, is barred if the plaintiff [**27] has the option of arguing the issue before a labor grievance panel. See Hopkins v. United Parcel Service, Inc., 2000 Ohio App. LEXIS 443, 2000 WL 279228 (Ohio Ct. App. Feb. 11, 2000) (Hamilton County). Two other appellate courts have reached a different result, holding that HN18 § 4112.14(C) applies exclusively to age discrimination claims, and [*833] that its reference to "any remedies available pursuant to sections 4112.01 to 4112.11 of the Revised Code" is a reference to other remedies for age discrimination only, set forth within that range of provisions, not remedies for other forms of discrimination. See Wilson v. Glastic Corp., 150 Ohio App. 3d 706, 2002 Ohio 6821, 2002 Ohio 6822, 782 N.E.2d 1208, 1213 (Ohio Ct. App. 2002) (Cuyahoga County); Luginbihl v. Milcor Limited P'ship, 2002 WL 987853, at **6-8 (Ohio Ct. App. May 3, 2002) (Allen County). n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n12 Though it did not cite the contra holding in Hopkins, the court in Luginbihl squarely rejected the opinion of its sister district court of appeals that § 4112.14(C) reached remedies relating to all forms of discrimination contemplated by Chapter 4112 as a whole. The Luginbihl court, in contrast to the Hopkins court, held that although "rights" are created by §§ 4112.01-4112.11, the only "remedy" available under Chapter 4112 to prosecute discrimination other than age-based discrimination is found at § 4112.99, outside the ambit of § 4112.14(C).

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [**28]

As the Court will explain below, Beatty's discrimination and retaliation claims cannot succeed on their merits even if not barred by § 4112.14(C). Because that is the case, the Court finds it unnecessary to contemplate the applicability of this particular statute, which is a question better left to the courts of Ohio to resolve. With that in mind, the Court will now explain why

Beatty's claims must fail, as a matter of law.

HN19 Beatty has not adduced direct evidence of discrimination (e.g., firsthand account of a UPS manager stating that the company terminated him because of his race). Therefore, the Court's first task is to determine whether he can set forth a prima facie case of discrimination. Newman v. Federal Express Corp., 266 F.3d 401, 405 (6th Cir. 1999) (citations and internal quotations omitted); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973) (establishing standard by which employment discrimination claims arising under federal law are analyzed); Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm'n, 66 Ohio St. 2d 192, 421 N.E.2d 128, 131 (Ohio 1981) (holding [**29] that Ohio law parallels that of Title VII with respect to race discrimination). HN20 To demonstrate a prima facie case of discrimination in the employment termination context, a plaintiff must demonstrate (1) his membership in a protected class; (2) that he was terminated; (3) that he was qualified for the position; and (4) that he was treated differently than similarly situated employees outside the protected class. See Hoskins v. Oakland County Sheriff's Dept., 227 F.3d 719, 731 (6th Cir. 2000). As always in the summary judgment context, the Court will view the facts, and all reasonable inferences which can be drawn therefrom, in a light most favorable to the non-moving party in determining whether genuine issues exist as to all of the prima facie elements.

Beatty has not adduced any fact creating a genuine issue as to whether he was similarly situated to other employees, not within the protected class, who were treated differently than he under similar facts. Therefore, he is unable to make out a prima facie case of discrimination. It should be stressed that whether UPS used reasonable means to collect the unpaid funds owed by Moon is beside the point; that would have [**30] been an issue to present to the State Committee. What Beatty must adduce in this Court, under Title VII and Chapter 4112, are facts demonstrating that UPS treated him differently than it treated persons outside his protected class but otherwise similarly situated, notwithstanding any right it might have had under the CBA to treat him as it did.

[*834] The matter involving Kerns, which is his sole basis for his discrimination allegation, was quite different from his own. It is immaterial whether Kerns was ever given tacit permission to withhold packages from Moon at a subsequent date, in order to coerce Moon to deliver an acceptable form of payment for the C.O.D. items previously, and erroneously, delivered to him (by Kerns) in exchange for a personal check. The fact of the matter is that Kerns never caused UPS to present a bad check to its bank and to lose out on funds as a result. Kerns' error, admittedly the same as Beatty's at its inception, was remedied before it caused a collections issue or, ultimately, a financial loss to the company. This is a material difference which cannot be overlooked. The bottom line is that UPS never had grounds for disciplining or terminating Kerns, as it [**31] did with Beatty. The fact that UPS did not permit Beatty to employ a similar tactic with respect to Moon, several months after it had already realized a financial loss due to Beatty's error, does not demonstrate disparate treatment of similarly situated individuals; rather, it touches upon the reasonableness of the company's collections efforts, which, again, is not an issue for this Court to consider. n13 Furthermore, Kerns received his tacit approval to act as he did with respect to Moon from Coke, Brown and Faucett, whereas Beatty's request was denied by Fleek. See Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (recognizing HN21 importance of demonstrating disparate treatment by the same supervisor or manager, where it is the conduct of that supervisor or manager that is the source of the plaintiff's complaint). n14

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - - -

n13 More probative is the evidence, adduced by UPS, that at least three other employees, all Caucasian, have been required to reimburse UPS due to conduct similar to Beatty's. This

evidence tends to demonstrate that UPS enforces its reimbursement policy across the board, irrespective of an employee's race. Thus, not only has Beatty failed to adduce evidence that he was treated differently than similarly situated employees outside his protected class, but UPS has gone so far as to adduce uncontroverted evidence to the contrary. [**32]

n14 Having said this, the Court will observe parenthetically that it seems remarkable for UPS to assert that it used "reasonable means" to recoup its loss. The evidence readily demonstrates that Moon is (or at least was) a local business owner and regular UPS customer, such that it would have been easy enough for a manager such as Fleek to contact him directly regarding the returned personal check. Furthermore, the evidence of Moon's direct payment to the shipper of the items he picked up from UPS in October of 1997, documentation of which Beatty forwarded to Fleek, strongly suggests that the shipper was double paid for said items. In the Court's opinion, "reasonable means" would have included a more diligent inquiry into that matter, and more diligent efforts to make the company whole by recouping its out-of-pocket expenses from the double payments made to the shipper. The Court makes this point to highlight the critical difference between unfairness and discrimination. When construed in Beatty's favor, the facts tend to demonstrate that he was treated unfairly. That, however, is subject matter to be raised via the labor-management dispute resolution process, and § 301(a) of the LMRA, if necessary. On the other hand, the facts, again construed in Beatty's favor, do not give rise to a reasonable inference that he was the victim of discrimination. The issue before this Court, the only issue over which this Court has jurisdiction under the issues as shaped herein, is whether the Plaintiff was discriminated against, not the overall fairness of his treatment. For that reason, UPS is entitled to summary judgment.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [**33]

Because Beatty is unable to adduce facts sufficient to create genuine issues as to all of the elements of a prima facie case of discrimination under Title VII and Chapter 4112, the Court shall sustain UPS's Motion as to this claim.

Beatty's retaliation claim is also without merit. Again, he offers no direct [*835] evidence of retaliation (e.g., firsthand account of a UPS manager stating that the company terminated him because he filed an EEOC claim). HN22 Claims for retaliation must also be analyzed pursuant to the McDonnell Douglas standard, noted above. See Virts v. Consolidated Freightways Corp. of Delaware, 285 F.3d 508, 521 (6th Cir. 2002). Thus, the Court must first determine whether Beatty can make out a prima facie claim, which requires a showing that: 1) he engaged in activity protected by Title VII; 2) his exercise of this right was known by UPS; 3) that, thereafter, UPS took an employment action adverse to Beatty; and 4) that there was a causal connection between the protected activity and the adverse employment action. See Williams v. General Motors Corp., 187 F.3d 553, 568 (6th Cir. 1999). Again, the Court will view the facts, and all reasonable [**34] inferences which can be drawn therefrom, in a light most favorable to Beatty.

There is no question that Beatty filed an EEOC claim in 1996. The dispositive deficiency to his claim is that he cannot adduce any facts demonstrating how his termination in 1998 was proximately caused by his action in 1996. (Beatty Depo. at 91.) In his Memorandum in Opposition, Beatty contends that his retaliation claim is bolstered by his deposition testimony that he was subjected to certain "tests" and "driver re-qualification" requirements, to which other employees in like positions at UPS were not subjected. (Doc. # 27 at 17.) This argument is not well taken. Whatever the truth of these allegations, they are not the basis for his current retaliation claim. Rather, they were what caused him to file his complaint with the EEOC in 1996. (Beatty Depo. at 89-90.) The Court is unaware of what became of that