# Expert Approaches

by Gregory P. Joseph

Taking testimony from adverse experts is a tricky proposition—extracting what you want and bottling up what you don't. Experts are advocates. They know more about their fields of expertise than you do. They can do real damage to your case. But you can do real damage to them, too. A strong cross-examination of adverse experts at trial can have a telling effect on the outcome of the case. (Let's not dwell on the effect of a weak cross.) Is taking the expert's deposition an unmixed blessing in readying yourself for the confrontation at trial?

For years, there has been an almost rote approach to dealing with experts in federal litigation. You learn all you can before you confront the expert. You study her report. You look at the principal texts, articles, and standards in the field. You take the expert's deposition in excruciating detail. You explore everything you possibly can that might assist you in destroying the expert at trial; you freeze her opinions into place so you have a fixed target to shoot at; and then you proceed to cross-examine at trial.

But there are dangers in deposing an expert. Leaving your cross-examination on the deposition room floor (that is, preparing the expert to withstand cross-examination at trial) is a serious risk. And taking expert testimony is always a nuanced exercise. Special rules apply to experts. Asking questions, even at a deposition, can open doors that otherwise remain shut. Not asking questions can lead to unpleasant surprises at trial. The choices have never been easy.

Things have gotten more complicated. Recent amendments to the Federal Rules of Civil Procedure (FRCP) and Federal Rules of Evidence (FRE) call traditional tactics into question. It is no longer necessary to take the deposition to freeze the positions of most expert witnesses—the FRCP do that for you. If you take the deposition, you may expose yourself to testimony at trial that is otherwise off limits—the FRCP pose that risk. Yet you may still want to depose the expert—carefully—to know how far you can go on cross without opening the door to testimony that the 2000 Evidence amendments otherwise close. The issue is whether, on balance, the witness's testimony is likely to be better contained, and your cross-examination more effective, by not deposing rather than by taking the deposition.

The three key questions about expert depositions in federal litigation are now: (1) Do you depose? If so, (2) What do you need to know? And, equally important, (3) What don't you want to know?

When you get to trial, there are also new issues created by the 2000 amendments. Lay witnesses who offer opinions may become experts and have to satisfy expert testimony requirements. In addition, any witnesses who give expert opinions are newly constrained in the scope of their testimony—if your cross-examination does not inadvertently free them of the constraints that the Rules impose.

The right to depose adverse experts was formally codified in FRCP 26(b)(4) in 1993, but that was largely a matter of moving the sidewalk to where the people were already walking. By 1993 expert depositions had been a matter of course in federal court for years. The objective of free-ranging expert discovery in federal court is straightforward: to avoid trial by surprise.

The 1993 amendments to the FRCP introduced a new approach to avoiding trial by surprise, inaugurating the mandatory expert report of Rule 26(a)(2)(B). This report is comprehensive in nature, unlike the prior expert interrogatory answers that, before 1993, were the sole method of obtaining written expert discovery (and that in substance largely consisted of circumlocutions for "my side should win"). The mandatory expert report introduced in 1993 is intended to obviate the need for expert depositions and, therefore, must precede any expert deposition under Rule 26(b)(4)(A).

The mandatory expert report of Rule 26(a)(2)(B) must include a great deal of information, including:

---

Gregory P. Joseph, a former chair of the ABA Section of Litigation, heads Gregory P. Joseph Law Offices LLC in New York City.

- Opinions: "a complete statement of *all opinions* to be expressed and the *basis and reasons* therefor"
- Data: "the data or other information *considered* by the witness in forming the opinions"
- Exhibits: "any exhibits to be used as a *summary of or support* for the opinions"
- Qualifications & Publications: "the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years"
- Compensation: "the compensation to be paid for the study and testimony"
- Prior Testimony: "a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years"

This detailed report is required of every expert who is "retained or specially employed to provide expert testimony ... or whose duties as an employee of the party regularly involve giving expert testimony" under Rule 26(a)(2)(B). Apart from treating physicians, that pretty much covers the waterfront of expert witnesses. (At least, it used to—we'll come back to this.)

The teeth enforcing the expert report requirement are sharp. Under FRCP 37(c)(1), if a party fails to disclose expert opinions or exhibits, the undisclosed matter is automatically excluded at trial, unless there is "substantial justification" for the failure to disclose or the "failure is harmless." Rule 37(c)(1) provides: "A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." This is not some hypothetical remedy that isn't applied in practice. Opinions and exhibits that are not disclosed in a timely fashion under Rule 26(a)(2)(B) are frequently excluded by district judges. *See generally* Joseph, *Sanctions: The Federal Law of Litigation Abuse* §§ 48-49 (3d ed. 2000; Supp. 2002). Experts have been stricken even for failing to provide the mandatory case list identifying prior testimony they gave during the past four years. *Ortiz-Lopez v. Sociedad Espanola*, 248 F.3d 29 (1st Cir. 2001).

If you really intend to try your case, you ought to think long and hard about whether you want to take that expert deposition. Why? Not only because the 26(a) report freezes experts' testimony to their reported opinions and sources—and thus eliminates the need for a deposition to accomplish that—but also because taking a deposition can actually liberate experts to expound far beyond the bounds of their reports. If an expert volunteers new or different opinions, data, or exhibits in a deposition, that cures their omission from the expert's Rule 26(a) report. The automatic preclusion remedy of Rule 37(c)(1) will no longer apply because there is a carve-out from the preclusion remedy in Rule 37(c)(1) if the omitted expert testimony has "otherwise been made known to the other parties during the discovery process or in writing," under Rule 26(e)(1). An expert deposition is a prime example of "ma[king] known" the expert's opinion "during the discovery process."

There are two lessons in this. First, you may well be better off not deposing the adverse expert. You have the report. It must set forth all facts, opinions, and exhibits the expert plans to use. If the expert attempts to insinuate new facts or opinions that are not contained in the Rule 26(a) expert report, those new items are presumptively excluded under Rule 37(c)(1). There is a separate tactical angle as well. If you do not depose, you will be an unknown quantity to the expert. You will also have given no prior signals as to where your cross-examination is likely to go. The expert cannot bone up on what she does not expect.

Second, if you decide to take an expert deposition, you must be careful what you ask. You may open the door to testimony that would otherwise be precluded under Rule 37(c)(1). There is, to be specific, considerable downside in asking common deposition questions designed to ensure that no unexplored opinions exist—like the traditional catch-all question "Do you have any other opinions in this case that we haven't discussed?" You generally don't want to know the answer to that question. If you don't ask it and the opinions are not provided in the report, the deposition, or otherwise "in writing" under Rule 26(e)(1), the undisclosed opinions are presumptively excluded under Rule 37(c)(1).

From this perspective, the answer to the question whether you really want to depose that expert is often no. But there are, of course, risks. There are things that the expert may testify to at trial that you do not know and may not expect. The judge may allow the expert more latitude than you would prefer. You may be less comfortable confronting the witness for the first time at trial, just as the witness is more uncomfortable confronting you. There may be inconsistent testimony that could have been elicited on deposition for use at trial that has been forgone. But you will not have opened the door to additional testimony through the deposition testimony; you will not have signaled your cross; and you will not have left a sterling cross-examination in the deposition room and allowed the witness to arm herself with a series of plausible explanations that undercut the progress you think you have made by taking the testimony in advance of trial.

Suppose that your adversary declines to depose your expert and you consider this a disadvantage. You want to know how she will be attacked at trial or at least get some idea whether there are areas you want to fortify. You might consider calling





the witness for deposition yourself, on the ground that you want to be certain to have the expert's deposition at trial and not be subject to the risk of unavailability. That will force the opponent to cross-examine. You might be compelled to make the choice, if your opponent approaches the court, of making this deposition the expert's trial testimony; but many judges will not require that choice because it could be unfair for one side to have to present its expert via deposition while the other may do so live—or else be subject to the risk of losing the expert altogether. In all events, this is an option to consider should this situation arise.

In the context of experts, we often think of discovery as being synonymous with depositions. But that isn't correct. You may decide not to depose and still conduct expert discovery. Since the 1993 amendments to Rule 26(a), it is well settled that experts may be served with Rule 34 document requests and Rule 45 subpoenas for their files, draft reports, correspondence with counsel, hard drives, e-mails, and everything else they have that is pertinent to the case. The 1993 Advisory Committee Note to Rule 26(a) says that "parties are not precluded from using traditional discovery methods to obtain further information regarding these matters," i.e., matters that are subject to mandatory disclosure, which includes experts. See, e.g., Caruso v. Coleman Co., U.S. Dist. LEXIS 18587 (E.D. Pa. Dec. 27, 1994); Ladd Furniture v. Ernst & Young, 1998 U.S. Dist. LEXIS 17345 (M.D.N.C. Aug. 27, 1998). Of course, if you go down this road, expect the other side to reciprocate. And if you cannot produce all of the drafts of your expert report, you may face spoliation issues and sanctions. See, e.g., Trigon Insurance Co. v. United States, 2001 WL 1456388 (E.D. Va. Nov. 9, 2001).

But this is only the Civil Rules side of the story. The 2000 amendments to the FRE add a pair of new wrinkles. The first concerns who, precisely, is an expert—and shunts a lot of formerly lay witnesses into that category. The second closes the door on the common tactic of using an expert to place inadmissible matter before the jury—unless that door is opened on cross-examination. Both of these have immediate repercussions on deposition practice and on the question whether, or to what extent, you depose.

In the past, it was pretty easy to identify expert witnesses in federal litigation. The other side told you who their experts were. This wasn't done out of the goodness of their hearts but was mandated by former Rule 26(b)(4)(A)(i) (expert interrogatories) and by pretrial orders. Since 1993, Rule 26(a)(2)(A) (the provision immediately preceding the expert report requirement) has separately required that each side must disclose the identity of any witness giving expert testimony regardless whether an expert report is required from that witness.

## Lay "Experts"

Experts are no longer obvious, however, under the 2000 amendment to FRE 701. Rule 701 deals with opinion testimony by lay witnesses and allows lay people to opine about matters of common experience that they have actually observed—for example, the speed of a car, the mood of a person, or the size of a room—when that testimony would be helpful to the jury. Prior to December 1, 2000, Rule 701 permitted lay "opinions or inferences that are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

But what if the lay witness had a specific area of expertise? If the witness perceived the necessary facts and could opine in a way that would be helpful to a determination of a fact in issue, may the lay witness offer an opinion in his area of expertise, even though not qualified as an expert witness?

Rule 701 was amended in 2000 to answer this question—in the negative—by drawing a bright line between lay and expert opinion. The new rule converts lay witnesses into experts if and to the extent that their testimony is, in substance, expert testimony. A new subpart (c) was added to Rule 701 to carve out any lay opinions "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." This is a subject matter test. Even if the witness is otherwise offering lay testimony regarding facts in his knowledge, to the extent that the witness gives an opinion "based on scientific, technical, or other specialized knowledge within the scope of Rule 702," that witness is offering an expert opinion. This has significant implications under the Civil Rules for discovery practice and pretrial preparation.

Two examples: In a business case, the chief financial officer of a corporation may have a lot of facts to offer the jury—what the financial records show, how they were maintained, what they mean. These are things she knows in the ordinary

course of business. If the CFO is also a certified public accountant, though, and is asked whether the financial statements comply with generally accepted accounting principles, an answer to that question is expert testimony. Rule 701 converts the CFO into an expert for purposes of that opinion.

Or consider a broker who sells a home or a business. In a contract case over a broken sale, the broker may have a lot of relevant facts to testify to—he knows facts about the home or business sold, the negotiations leading up to the sale, and the consideration that was agreed to be paid. If the broker is asked to give an opinion on the value of the home or business, however, he becomes an expert to that extent.

Previously, some courts allowed non-expert witnesses with specific areas of expertise to testify on questions like these as "lay experts." The notion was that, if the lay witness knew the facts and was thoroughly knowledgeable in a particular field, he could offer an opinion that was helpful to the jury under Rule 701 and was not considered an expert. That notion is history, as of December 1, 2000. The test now is the subject matter of the particular question asked and answer given. According to the 2000 Committee Note to Rule 701, the distinction

> You cannot hide lay witnesses in the weeds and spring their "expert" opinion testimony at trial.

is simple: "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" If the subject matter of the testimony falls within Rule 702's "scientific, technical, or other specialized knowledge," that testimony is expert testimony.

This does not mean that either the CFO or the broker must file an expert report under Rule 26(a)(2)(B). Neither of them has been "retained or specially employed to provide expert testimony" in the hypotheticals above. Neither of them is someone "whose duties as an employee of the party regularly involve giving expert testimony." Therefore, neither of them must file a report under Rule 26(a)(2)(B) as a precondition to offering their expert opinions. However, to the extent that either of them will be called to testify to an expert opinion, they must specifically be disclosed to the opposing party under Rule 26(a)(2)(A). Failure to make that disclosure will lead to presumptive preclusion of their expert opinions under Rule 37(c)(1).

The 2000 amendment to Rule 701 has three serious practical ramifications. First, the lay witness's expert opinion now must satisfy FRE 702, which was amended in 2000 to codify *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). This was one of the primary purposes of the amendment to Rule 701—to avoid the incongruous situation in which a more qualified expert might be barred from giving an opinion at trial under Rule 702 (and *Daubert*), while a less qualified lay person might be permitted to offer the equivalent

of an expert opinion under Rule 701. Rule 702 how applies to any witness testifying as to "scientific, technical, or other specialized knowledge," and this testimony must satisfy these three criteria: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Many qualified experts falter when confronted with these requirements. It is not going to be any easier for lay witnesses.

Second, you cannot hide lay witnesses in the weeds and spring their "expert" opinion testimony at trial without notice. FRCP 26(a)(2)(A) requires that "a party *shall* disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Now that lay witnesses cannot offer expert opinions under Rule 701, their testimony is admissible only if it satisfies Rule 702. That means they must be identified as experts or their testimony is subject to automatic exclusion under Rule 37(c)(1). But if your opponent has not done so, do you want to cure that error?

Third, if you are at trial with a lay witness who was not disclosed as potentially offering expert opinions and therefore cannot introduce the expert opinion from the witness, you can certainly get as close as possible to it. Even if the hypothetical CFO is not permitted to attest to her own opinion that the financial statements were prepared in accordance with GAAP, she presumably can testify that she reviewed the financial statements; that she is a CPA; that, as a CPA, she is trained in GAAP; that she approved the financial statements; that she did so after consultation with the company's outside CPA firm; and that the CPA firm reviewed the financial statements, issued a clean opinion that was incorporated in the company's public filings, and never expressed to her any concern that the financial statements did not comply with GAAP.

Consider a typical discovery scenario. You're in the midst of fact depositions. It is obvious who the key fact witnesses are, and some of them have areas of expertise that raise the specter of expert opinion. You will shortly be deposing them as fact witnesses. They have not been disclosed as potentially offering expert testimony as required by Rule 26(a)(2)(A). When deposing them, do you attempt to elicit any expert opinions they may hold? If you do, you will have opened the door to their testimony under Rule 26(e)(1)—their expert testimony will have "otherwise been made known to the other parties during the discovery process. ..." You will lose the preclusion argument that you can otherwise make under Rule 37(c)(1) because you will have cured your opponents' nondisclosure. There is little reason to do this. Even if your adversary sends a 26(a)(2)(A) disclosure after fact discovery has concluded (there is no deadline set forth in the Rule, so it is largely a matter of the pretrial order or applicable local rule), the judge is likely to grant a request to depose the witness on the limited area of his expert testimony.

There is yet another 2000 amendment to the FRE that bears on the decision whether to depose experts and how to cross-examine them. That is the amendment to Rule 703. Since 1975, Rule 703 has authorized experts to offer opinions that are based on otherwise inadmissible data if those data are "of a type reasonably relied upon by experts in the particular field." For years this rule has been used creatively by trial lawyers to get before the jury all sorts of hearsay and inadmissible matter that their experts rely on. The back door has

been wide open, and everything that an expert could plausibly say is "reasonably relied upon by experts in the particular field" has been run through it.

The 2000 amendment to Rule 703 closes this door. The amendment makes it clear that, although "[t]he facts or data in the particular case upon which an expert bases an opinion or inference ... need not be admissible in evidence," that doesn't mean that the jury is entitled to hear them. On the contrary, the amendment says it is not. The new rule provides, first, that the expert's reliance on inadmissible material merely permits "the opinion or inference to be admitted." Second, it adds, "Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent ... unless

> You may serve a Rule 34 or 45 discovery request or subpoena for everything relied upon.

the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect."

As an adversary, therefore, you start with a substantial leg up in keeping the expert's testimony contained and excluding any underlying data that are not independently admissible or highly trustworthy. The party putting on the expert may not introduce the inadmissible basis of the testimony unless it can convince the court that the balancing test—which is heavily weighted against admission—has been satisfied.

This poses a series of tactical issues on direct, on cross, and in discovery. On direct, you want the expert's testimony to be convincing. You want the jury to hear everything that your experts did to prepare themselves to come to a sound conclusion. What are the limits? Presumably, you may elicit testimony that, for example, your economist read four years' worth of newspaper, magazine, and journal articles pertaining to the relevant industry. But you may not ask what those articles said. You probably can elicit that your engineer obtained information from component part manufacturers, but, unless that information is independently authenticated, you likely cannot ask about the details of what the engineer was told. You might be able to ask your MIT economist whether she reviewed the case with any of her colleagues (this may be over the line), but you certainly cannot ask how they responded. There is a blurry line, but a line nonetheless.

On cross-examination, you have to decide whether or how far to explore the basis of the opposing expert's opinion. You run a serious risk of opening the door that the amendment closes and allowing in all of the inadmissible material that is presumptively excluded. In the words of the 2000 Committee Note, "an adversary's attack on an expert's basis will often open the door to a proponent's rebuttal with information that was reasonably relied upon by the expert, even if that information would not have been discloseable initially under the balancing test provided by this amendment."

This does not mean that, by taking a deposition, you open the door to the expert's regaling the jury with the inadmissible data on direct at trial. This door is only opened by your cross at trial. It does mean that you have to know what the inadmissible basis is so that you can make an informed judgment about how far you want to go in cross at trial, and what risks you are taking. That may augur in favor of taking the deposition.

Do you need to depose the expert about the basis of her testimony to be able to cross-examine effectively? Not necessarily. You may serve a Rule 34 or 45 discovery request or subpoena for everything relied upon, considered, or reviewed by the expert in connection with her retention (if you do, you will certainly see it reciprocated). Also, the expert's report must contain "a complete statement of ... the basis and reasons" for the expert's opinion and must recite all "data or other information *considered* by the witness in forming the opinions. ..." The two—the report and the material received in response to the Rule 34 or 45 discovery documents—should tie together. There is no doubt that you will learn more about the basis of the expert's testimony if you do depose. The question is whether it is worth the risks. If you do depose, you should keep Rule 37(c)(1) clearly in mind and not ask whether there are other data on which the expert based her opinion outside of what was produced in discovery or set forth in the expert's report (thereby opening the door). Importantly, Rule 37(c)(1) presumptively precludes not only matters undisclosed in the expert report but also matters not provided in discovery. Therefore, any trial testimony by the expert about bases for her opinion that were not previously disclosed twice run afoul of Rule 37(c)(1) and should be excluded.

In addition, the 2000 amendments to the FRCP include a new seven-hour, single-day limit on each deposition, in Rule 30(d)(2). If seven hours is likely to be insufficient to permit a thorough deposition of a particular expert, address this as soon as it becomes apparent, preferably in advance of the deposition (although deposition behavior may interpose delays that require it to be brought to the attention of the court later). In addition, the 1993 amendment to Rule 30(a)(2)(A) set a limit of 10 depositions per side (not per party). Like the seven-hour limit, the 10-per-side limit may be overridden by stipulation or court order, and both of these subjects should be addressed in the initial discovery schedule provided to the court in the parties' Rule 26(f) report.

### Quirks

A couple of quirks in these provisions should be noted. First, the deposition of each person designated pursuant to a Rule 30(b)(6) deposition notice counts as a separate deposition for purposes of the seven-hour rule, but not for purposes of the 10-deposition-per-side rule. Rather, all persons presented in response to a Rule 30(b)(6) notice count as one person for the 10-per-side rule. Although a Rule 30(b)(6) deposition notice will not cover retained experts, it may very well encompass a lay witness now offering expert testimony, in light of the new Rule 701. You should consider whether one category of Rule 30(b)(6) deponents ought to be any expert opinions on the topics at issue in your case. If the opponent objects that Rule 30(b)(6) is an inappropriate vehicle to circumvent the schedule for expert discovery, that will be tantamount to an admission that no expert testimony will be forthcoming from company representatives

and may be used later if a different tack is taken at trial.

All told, the changes to the FRCP and FRE raise a number of tactical and practical issues. A dozen points to remember:

1. All witnesses who will testify to an expert opinion within FRE 702—including lay witnesses, in light of the 2000 amendment to Rule 701—must be disclosed under FRCP 26(a)(2)(A). You need not concede that an opinion to be given by a lay person is necessarily an expert opinion (you don't want to deal with *Daubert* if you don't have to), but you must make the disclosure. It should suffice simply to send a letter to your opponent indicating that you expect lay witness X to testify on subject matter Y at trial and that, while you don't consider this Rule 702 testimony, you want your adversary to be aware of it, adding that you are making the disclosure as a cautionary matter under Rule 26(a)(2)(A).

2. In deposing lay witnesses, be careful not to elicit undisclosed expert opinions unless you consciously decide to forgo the presumptive preclusion remedy of Rule 37(c)(1).

3. If you intend to elicit expert testimony from lay witnesses, you must qualify them, and their opinions, under Rule 702. If you wish to preclude their testimony, it is subject to a *Daubert* motion, and the three-part test now enunciated in Rule 702 is a guide to any *Daubert* motion.

4. Under Rule 26(a)(2)(B), "all opinions to be expressed" by the expert must be included in the expert's report. If you do decide to take the expert's deposition, do not elicit previously undisclosed opinions unless you decide that doing so is more important, in the context of the case, than relying on the preclusion remedy of Rule 37(c)(1).

5. Suppose you want to use a learned treatise under Rule 803(18), either on direct or on cross. (Under Rule 803(18), you may cross-examine an adverse expert using an authority that has been authenticated as reliable by your own expert.) Must the expert report of the authenticating expert contain an opinion about the reliability of the treatise? On a plain reading of Rule 26(a)(2)(B), the answer is yes, because the authentication consists of an expert opinion—namely, that the treatise is reliable—and is an "opinion to be expressed."

6. Under Rule 26(a)(2)(B), "any exhibits to be used as a *summary of or support* for the opinions" must be included in the expert's report. Do you really prepare trial-quality graphics at the time the expert report is prepared? Hardly. But failure to include your expert exhibits in the report can lead to exclusion under Rule 37(c)(1). See, e.g., *Wilson v. Bradlees of N.E., Inc.*, 250 F.3d 10 (1st Cir. 2001). Solution? Provide for this in your pretrial order—set a date close to trial for the exchange of expert exhibits. (Other demonstratives should also be covered, to avoid a similar problem under Rule 26(a)(3) or the pretrial order itself.)

7. Under Rule 26(a)(2)(B), "a complete statement of the *basis and reasons*" for the expert's opinion and of "the data or other information *considered* by the witness in forming the opinions" must be included in the expert's report. What about communications between the expert and counsel? There is a split of authority on the discoverability of this information. *Compare Karn v. Ingersoll Rand*, 168 F.R.D. 633, 639 (N.D. Ind. 1996) (discoverable) *with Haworth, Inc. v. Herman Miller, Inc.*, 162 F.R.D. 289 (W.D. Mich. 1995) (not discoverable). The only safe way to proceed is to assume that everything you say, write, or e-mail to your expert may appear on the front page of the *National Enquirer*. (And don't forget that any article from the *Enquirer* more than 20 years old facially satisfies the ancient document rule, Rule 803(16).)

8. The expert report and any expert deposition may be supplemented through and including the date of the pretrial order, under Rule 26(e)(1). If additional opinions, bases, exhibits, or other matters that should have been disclosed have for any reason not been disclosed, supplementation must be made. If an adversary is abusively late in supplementing with material that has improperly been withheld, the court may allow additional discovery into the new matter and consider the appropriateness of sanctioning any misconduct under Rule 37(c)(1).

9. If you permit your testifying expert to speak with any non-testifying expert, those communications will be discoverable and are disclosable in the expert report if they have been "*considered* by the witness in forming the opinions"—a very broad standard. All lines of communication with your expert should be thought out before any communications occur.

10. Documentary discovery of the expert should include everything that the expert has relied on, considered, and received in connection with the engagement. Drafts of expert reports should be requested if you are in a position to produce them or explain their absence.

11. The amendment to Rule 703 sharply limits the ability of the proponent of expert testimony to amplify to the jury any inadmissible matter on which the expert's opinion is based. This limitation can be waived by cross-examination into the inadmissible material. Accordingly, you should explore the basis of the expert's opinion thoroughly before trial—whether or not a deposition is taken—and you should think carefully about the risk of opening the door when crafting your cross-examination.

12. As the proponent, you may want the expert to testify about the basis of her testimony as a preventive measure—so that it doesn't appear that you were hiding anything from the jury when it is the subject of cross-examination. The 2000 Committee Note to Rule 703 has an interesting passage on this subject:

> [T]he proponent might wish to disclose information that is relied upon by the expert in order to 'remove the sting' from the opponent's anticipated attack, and thereby prevent the jury from drawing an unfair negative inference. The trial court should take this consideration into account in applying the balancing test provided by this amendment.

In other words, it is a fair argument to present to the judge.

We return to the questions whether or to what extent to depose the expert and how broadly to cross-examine. Think hard before you decide in each case. Ultimately, like all trial judgments, it will be a facts-and-circumstances call. Remember:

- Inquiring in deposition may open the door to Rule 702 testimony that would otherwise be precluded under Rules 26(a)(2)(B) and 37(c)(1).
- Inquiring at trial may open the door to testimony precluded by Rule 703.
- Not inquiring in deposition leaves you subject to potentially greater uncertainty about the potential scope and content of the expert's testimony.
- Not inquiring at trial could leave the expert looking better than would a more thorough cross on the basis of the expert opinion.

It's your call.