## AFFIDAVIT OF RANDOLPH H. FREKING

State of Ohio      )
                           ) SS
County of Hamilton  )

I, Randolph H. Freking, being first duly cautioned and sworn, do aver as follows:

1.     I am an attorney admitted to practice in the Courts of Ohio, the United States Supreme Court, the Sixth Circuit Court of Appeals and the United States District Court for the Southern District of Ohio. Since 1995, I have been listed in every edition of "Best Lawyers in America" (Woodward-White) in the area of employment law.

2.     I graduated from the Ohio State University College of Law in May, 1982 and was admitted to the Bar in November of 1982. From August of 1982 through December of 1990, I was an associate and then a partner with the law firm of Frost & Jacobs. During my entire tenure with Frost & Jacobs, I was in the Labor Department, which meant that I spent all of my time on employment and labor relations matters. On December 1, 1990, I started my own firm, which is now Freking & Betz. Our firm's employment law practice focuses exclusively in the representation of Plaintiffs. I have also been recognized as among the top seven of Plaintiff employment litigators in Ohio (Chambers USA)(2003), and among the top 50 of all lawyers in Ohio. ("Ohio Super Lawyers 2004" published by Law and Politics Media, Inc.). To my knowledge, these are based on peer reviews.

3.     To prepare for trial, conduct the trial, and perform other necessary services on behalf of Plaintiff, I incurred 152.3 hours of attorneys' fees. At an hourly rate of $385.00 per hour, the lodestar fees would amount to $58,635.50.

4.     In order to prove the claim of retaliation (and other related claims that were alleged in the case), we conducted an initial investigation prior to initiating litigation. During this investigation, Plaintiff unsuccessfully attempted to gather extensive information and negotiate an



PLAINTIFF'S EXHIBIT E

early resolution of this matter. Defendant refused to provide information requested by us during the initial investigation, and the matter could not be resolved.

5. We filed two formal charges of discrimination with the Federal Equal Employment Opportunity Commission ("EEOC"). The filing of those charges required us to assist Plaintiff with the drafting of a formal charge, responding to a questionnaire required by the EEOC, and the preparation of a detailed Affidavit to the EEOC. In addition, we attempted to assist the EEOC during its investigation of the matter. We also encouraged that the matter be conciliated during the processing of the EEOC Charge, to no avail.

6. After realizing that settlement overtures during the investigation phase and during the EEOC charge processing phase would be unsuccessful, we initiated this litigation. The litigation process can best be described as difficult.

7. In response to Defendant's counsel's claims, we carefully reviewed all aspects of the case and the information in Plaintiff's possession at that particular period of time. Extensive discussions were conducted with Defendant's counsel, between Plaintiff's various counsel within the law firm of Freking & Betz, and between us and Plaintiff. These threats by Defendant "raised the stakes" in the litigation.

8. Plaintiff also had to conduct extensive discovery in this matter. Multiple sets of interrogatories and document requests were served upon Defendant. Likewise, Defendant served interrogatories and document requests on us.

9. The depositions conducted by Plaintiff required extensive preparation by Megan Clark, my colleague, and review of written material provided by Plaintiff and Defendant. Each deposition, however, was conducted efficiently and no deposition lasted more than a few hours. Moreover, in order to save time, we agreed to a proposed protective order proposed by the Defendant.

10. Once discovery was completed in this matter, Defendant filed an extensive Motion

for Summary Judgment seeking to have the case dismissed in its entirety. This Motion was accompanied by further allegations by defense counsel that the matter was without any merit.

11. The Motion for Summary Judgment prepared by this firm required us to expend a substantial number of hours preparing a Memorandum in Opposition to the Motion. This work included an extensive evaluation of the facts and witness testimony, as well as the other information obtained during the course of discovery. The Motion also required us to do some, though limited, research on applicable law. The research conducted was done efficiently, as we were experienced and familiar with the authority cited by Defendant in its Motion. The work performed on the Memorandum in Opposition to the Motion for Summary Judgment was largely done by Megan E. Clark, an experienced and knowledgeable attorney in our firm.

12. The parties jointly prepared a Final Pre-Trial Order presentation to the Court, before denied Defendant's Motion for Summary Judgment. This Final Pre-Trial Order was later revised after the Court's summary judgment ruling.

13. The parties further prepared for and spent an entire day in mediation of this dispute in late October 2003 with the Honorable Jack Meagher. It became clear that the parties had drastically different evaluations of the worth of this case. The mediation therefore failed to resolve the dispute.

14. When it appeared that settlement in this matter was not likely, Megan E. Clark and I assumed responsibility for the trial of the matter. I was intimately familiar with the matter, having supervised Ms. Barron during the preliminary phases of representation, supervised Ms. Clark during the discovery process, and having committed upon initial representation of Plaintiff to be trial counsel. I assumed responsibility for cross-examination of most of Defendant's witnesses, pre-trial motions and opening/closing statements. Ms. Clark assumed responsibilities for jury selection, examination of Plaintiff, several direct examinations, and cross-examination of one of Defendant's witnesses. The work involved in preparation for trial and the conduct of the

trial was divided so as to avoid, as much as possible, duplication of effort. Tod Thompson, a newer lawyer, assisted with drafting of responses to the motions in limine in order to reduce our fees.

15. Prior to trial, Defendant filed two motions in limine. These motions required us to respond with memorandum in opposition and/or oral argument to the motions.

16. During trial, we represented Plaintiff during jury selection and approximately five days of trial. The jury selection lasted approximately one-half day on Monday December 8, 2003. We then spent approximately one-half day Monday, a full day Tuesday, December 9, a three quarter day Wednesday, December 10, and a half-day Thursday, December 11. We further spent a full day Monday, December 15. The Court conducted a charge conference on the morning of Tuesday, December 16, and parties conducted closing arguments that afternoon. Before, during, and after each trial day, we prepared for the following days of trial.

17. Suzanne L. Mehl has 10 years of experience as a paralegal and was formerly a paralegal at Montgomery, Rennie & Johnson; Clinton Collins was formerly a paralegal with Frost & Jacobs and has extensive law office experience; Nicole Seeling has been a paralegal with Freking & Betz since 1995; Kathi Huber has more than 20 years of law office experience and became a paralegal with Freking & Betz in 1997; Cindy Piecoro has more than 10 years of law office experience and became a paralegal with Freking & Betz in 1997; Phyllis Jones has 20 years of experience as a secretary, seven or eight of those as a legal secretary. She became a paralegal with Freking & Betz in 1998. None of her time spent as a secretary was billed to this matter. Angel Carpenter and Alicia Cole both became paralegals with Freking & Betz in 2002; and that each performed traditional paralegal services in this matter.

18. Various law clerks performed tasks, at an hourly rate of $60.00

19. Attached as Exhibit A to the Application is a summary of billable hours and hourly rates spent on this case from my time records and those of the other attorneys and

paralegals of our office.

20.    Attached as Exhibit D to Plaintiff's Application for Fees and Costs are the complete billing records maintained by our office during this case, as well as a true and accurate copy of Plaintiff's expenses incurred in this case.

Further Affiant Sayeth Naught.

_____
Randolph H. Freking

Sworn to and subscribed before me on this 9th day of January, 2004.

_____
Notary Public

SUSAN M. HARTUNG
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 06-17-06

## AFFIDAVIT OF MEGAN ELIZABETH CLARK

State of Ohio         )
                      ) SS
County of Hamilton    )

     I, Megan Elizabeth Clark, being first duly cautioned and sworn, do aver as follows:

    1. I am an attorney admitted to practice in the Courts of Ohio and the United States District Court for the Southern District of Ohio. I had primary authority for representation of Plaintiff in this matter. Randolph H. Freking and I were both responsible for representation of Plaintiff Readnower during the trial.

    2. I graduated from Indiana University School of Law-Indianapolis *magna cum laude* in May, 1995 and was admitted to the practice of law in Ohio later that year. From 1995 to 1997, I was a law clerk for the Honorable Roger B. Cosbey, Magistrate Judge for the United States District Court for the Northern District of Indiana. During those two years, I spent approximately 50-60 percent of my time on employment cases. From 1997 to June 2001, I was an associate attorney at Thompson Hine LLP in Cincinnati, Ohio, and focused exclusively on labor/employment law. Since August, 2001, I have been an attorney with the law firm of Freking & Betz exclusively engaged in the practice of employment law.

    3. I became involved in this case in September 2001 when this firm filed a law suit on behalf of Ms. Readnower.

    4. I handled the vast majority of the pre-trial litigation of this case. In so doing, I conducted seven depositions, most of which were used in opposing Defendant's Motion for Summary Judgment and/or involved witnesses who testified at trial.

    5. Three of these depositions required out of town travel. I drove to Columbus, Ohio to depose Daniel Goins at the law firm of Buckingham, Doolittle & Burroughs. I also traveled to

Pittsburgh, Pennsylvania to depose Karen Susan and Julie Seger. In order to save costs, I made this trip by car rather than airplane.

6. With respect to depositions, Defendant noticed Plaintiff for a deposition, which deposition was lengthy. Plaintiff was prepared for that deposition and I defended Plaintiff during her two-day deposition. To save deposition time, we agreed to numerous stipulations. In addition, Plaintiff and I reviewed the transcript that was ultimately presented to Plaintiff for review and signature. Defendant also deposed Plaintiff's treating physician. I prepared for and attended this deposition.

7. The depositions I conducted required extensive preparation and review of written material provided by Plaintiff and Defendant. Each deposition, however, was conducted efficiently and no deposition lasted more than a few hours. Moreover, in order to save time, we agreed to a proposed protective order proposed by the Defendant.

8. The discovery process also required that we file a Motion to Compel in order to obtain documents properly requested. We also filed a Motion to Quash a subpoena that was granted. Magistrate Judge Hogan did not issue an award of attorneys' fees, but the filing of the Motions was obviously necessary given Defendant's refusal to respond to proper discovery requests.

9. Once discovery was completed in this matter, Defendant filed an extensive Motion for Summary Judgment seeking to have the case dismissed in its entirety. This Motion was accompanied by further allegations by defense counsel that the matter was without merit.

10. I prepared a brief in opposition to summary judgment involving multiple claims. Although the Defendant was ultimately granted summary judgment on some of those claims, they were very much interrelated with those claims that survived summary judgment and therefore time spent on those claims is reasonable. Plaintiff was further required to respond to a lengthy Motion

2

to Strike Affidavits filed after our brief in opposition to summary judgment.

11.    As further discussed in the Affidavit of Randolph H. Freking, I also prepared for and attended the trial of this case.

Further Affiant Sayeth Naught.

_____
Megan Elizabeth Clark

Sworn to and subscribed before me on this 9th day of January, 2004.

_____
Notary Public

SUSAN M. HARTUNG
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 06-17-06

3