UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Teresa Readnower, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. C-1-01-654 |
| vs. | : | |
| | : | Judge Weber |
| General Ionics, Inc., | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OF DEFENDANT GENERAL IONICS, INC. IN OPPOSITION TO PLAINTIFF'S APPLICATION AND MOTION FOR ATTORNEY FEES AND COSTS**

**I.    INTRODUCTION**

On January 9, 2004, Plaintiff, Teresa Readnower, filed her Application and Motion for Attorney Fees and Costs in the above-captioned litigation. Defendant, General Ionics, Inc. ("General Ionics") hereby submits its Memorandum in Opposition to Plaintiff's Application. Because Plaintiff's Application clearly requests a fee award which is not reasonable, but excessive, Defendant respectfully requests that this Court should reduce Plaintiff's Application and Motion for Attorney Fees and Costs for the specific reasons, and in the specific amounts, set forth below.

**II.    DISCUSSION**

    **A.    INTRODUCTION**

42 U.S.C. §2000e-5(k) provides the framework for an award of attorney fees in Title VII cases and states: "In any action or proceeding under this subchapter, the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable

1

attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."

General Ionics does not dispute that Plaintiff is entitled to <u>some</u> award for attorney fees and costs. However, because the Plaintiff's fee application requests an award that is not reasonable, but excessive, Defendant submits that a reduction in attorney fees and costs sought is appropriate.

      **B.**    **PLAINTIFF'S ATTORNEYS' BILLABLE HOURLY RATES EXCEED THE STANDARD RATES FOR ATTORNEYS OF SIMILAR SKILL, EXPERIENCE, AND REPUTATION BY $43,772.50.**

           **1.**    **Plaintiff Has Failed To Meet Her Burden Of Establishing That The Hourly Rate Submitted Is Commensurate With The Hourly Rate Of Lawyers Of Comparable Skill Within The Community.**

In Plaintiff's Application, she seeks attorney fees based upon a billable hourly rate for Megan E. Clark of $235.00/hour, and a billable hourly rate for Randolph H. Freking of $385.00/hour. These rates exceed the standard rates for attorneys of similar skill, experience, and reputation in the Cincinnati, Ohio area. Therefore, Defendant respectfully submits that when determining the appropriate fee award to Plaintiff, this Court should reduce the hourly rate utilized to a reasonable rate for comparable attorneys in the Cincinnati, Ohio area.

Case law on the subject of the reasonableness of rates charged clearly outlines the factors to be considered in determining whether a billable hourly rate is appropriate, and supports Defendant's contention that the rates sought by Plaintiff's counsel are unreasonably high. In *Blum v. Stenson* (1984), 465 U.S. 886, 895, 896, the United States Supreme Court wrote: "The statute and legislative history that establish that 'reasonable fees' under §1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or non-profit counsel. To inform and assist the court

in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[1]

Several courts have utilized the "prevailing market rate" test to determine if attorney fees are reasonable. This was the case in *Brian A. v. Hattaway* (6th Cir. 2003), 2003 U.S. App. LEXIS 24835, *7,[2] wherein the Court stated: "The Sixth Circuit has found that the prevailing market rate is that rate which lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record, rather than a foreign counsel's typical charge for work performed within a geographical area wherein he maintains his office and/or normally practices". (Internal citations omitted). See also *Aquilino v. Univ. of Kansas* (D.Kn. 2000), 109 F.Supp.2d 1319, 1324, 1325 (internal citations omitted) ("In setting the hourly rate, the court should establish from the information provided to it and from its own analysis of the level of performance and skills of each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm for comparable private firm lawyers in the area in which the court sits calculated as of the time the court awards fees. A district judge may turn to her own knowledge of prevailing market rates as well as other indicia of a reasonable market rate").

In the present case, therefore, it was Plaintiff's burden to prove that the rates sought are commensurate with the prevailing rates for lawyers with similar years of experience, or in a similar practice area, in Cincinnati, Ohio. However, the only evidence adduced by Plaintiff is the affidavits from her counsel and two opinions from the Southern District of Ohio, one of

---

[1] In *Sullivan v. Com of Pa. Dept. of Labor and Industry, Bur of Vocational Rehab.* (3rd. Cir. 1981), 663 F.2d 443, 447, that Court noted: "Since §1988 is similar in purpose and design to §706(k) of Title VII (…) cases interpreting §1988 can be applied to §706(k) as well. Accord *Scales v. J.C. Bradford & Co.* (6th Cir. 1991), 925 F.2d 901, fn 4.
[2] Unreported cases are attached as Exhibit 1.

3

which is wholly irrelevant since, in that case, the parties reached a settlement where they stipulated to an award of attorneys' fees. See *McDaniel v. City of Cincinnati,* attached to Plaintiff's Application as Exhibit B. Thus, Plaintiff failed to meet her burden to establish that the hourly rates identified are reasonable for this type of litigation and for lawyers of similar skill, experience, and reputation.

> **2. In Determining The Rate Upon Which To Base Plaintiff's Attorney Fee Award, This Court Should Rely Upon The Ohio State Bar Association Survey, Which Provides Persuasive Evidence Of Prevailing Market Rates In Ohio.**

In 2001, the Ohio State Bar Association ("OSBA") released "The Desktop Reference on the Economics of Law Practice in Ohio" (the "Desktop Reference").[3] The objective of the Desktop Reference was "to observe changes on the relative status of its members' hourly billing rates and practices, incomes, law office overhead and management practices, and work week time allocations." Desktop Reference at p. 2. Further, the Desktop Reference, which synthesized results obtained based on sixteen Ohio geographic regions, was compiled, *inter alia*, to "help in cases involving judicial determination of attorney fees." Desktop Reference at p. 2. Accordingly, General Ionics respectfully requests that this Court take judicial notice of the Desktop Reference pursuant to Fed. R. Evid. 201(d).[4]

Specific to the issue before this Court, the Desktop Reference provides information on Attorney Hourly Billing Rates. This information is summarized based on five factors that include: 1) size of firm; 2) years in practice; 3) primary field of law; 4) legal classification; and 5) office location. Desktop Reference at p. 16.

---

[3] Attached as Exhibit 2.
[4] Pursuant to Fed. R. Evid. 902(5), General Ionics states that the Desktop Reference is an official publication of the Ohio State Bar Association and, thereby, self-authenticating.

Defendant submits that, based upon the OSBA survey adjusted for inflation, an appropriate hourly rate for Mr. Freking is $260.00 an hour. The OSBA survey reflects that the 1998 median hourly rate for attorneys practicing labor law for employees was $125.00. The survey further reflects a median hourly rate increase from 1998 to 2001 of 44%, bringing the 2001 rate to $180.00. Assuming the 44% rate increase from 2001 to 2003, an appropriate hourly rate for Mr. Freking in 2003 would be $260.00, <u>not</u> the $385.00 he claims.[5]

As Plaintiff's own fee structure demonstrates, Ms. Clark's time should be billed at a significantly lower rate than Mr. Freking's. In their fee application, Plaintiff's counsel assigns an hourly rate of $235.00 to Ms. Clark; $150.00 less than the $385.00 rate Mr. Freking seeks. Defendant submits that an appropriate hourly rate for Ms. Clark, given her level of skill and experience, is $160.00; $100.00 per hour less than the reasonable rate Defendant submits should be awarded for Mr. Freking's time.[6] Thus, according to the information compiled in this survey, Ms. Clark's fees should total $52,768.00[7] and Mr. Freking's fees should total $39,598.00.[8]

It is clear that counsel for Plaintiff has provided hourly rates that are unreasonably high. In their affidavits, neither Mr. Freking nor Ms. Clark provide any independent evidence that their hourly rates are standard for this type of matter, for attorneys with their years of experience, or for other attorneys in the Cincinnati, Ohio area. Rather, their only "proof" is a brief recitation of

---

[5] The actual rate, assuming a 44% increase from $180.00, would be $259.20.
[6] The Court should note that in applying the OSBA survey, Defendant has given Plaintiff the benefit of the doubt by utilizing the highest hourly rate applicable, based upon the different categories for determining fees. For example, the Desktop Reference provides hourly billing rate information according to years of experience. In 2001 the hourly billing rate for attorneys with 6-20 years of experience, such as Ms. Clark, was $138.00/hour. Similarly, by 2001, the hourly billing rate for attorneys with more than 20 years of experience, such as Mr. Freking, was $149.50/hour. Desktop Reference at p. 17. The survey further reflects a median hourly rate increase based on years of experience was 15%. Even assuming the 15% rate increase from 2001 to 2003, an appropriate hourly rate for Ms. Clark would be $159.00 and an appropriate hourly rate for Mr. Freking would be $172.00.
[7] This figure is based on Plaintiff's billing records that indicate Ms. Clark billed 329.8 hours for this litigation.
[8] This figure is based on Plaintiff's billing records that indicated Mr. Freking billed 152.3 hours for this litigation.

5

their employment history and accolades in support of what the Desktop Reference illustrates are undeniably excessive hourly rates.

As such, General Ionics believes that the fees indicated are overstated and that any award should be reduced by at least $43,772.50 to reflect the prevailing market rate for attorneys with similar years of experience as illustrated in the Desktop Reference.

      **C.    PLAINTIFF IS NOT ENTITLED TO RECOVER ATTORNEY FEES AND COSTS ON MATTERS THAT WERE UNSUCCESSFUL AND ON WHICH SHE DID NOT PREVAIL AT TRIAL.**

          **1.    Plaintiff's Attorneys Fees Should Be Reduced To Reflect Work Performed On Unsuccessful Claims.**

When Plaintiff commenced this action, she brought claims alleging: 1) gender discrimination in violation of Title VII; 2) gender discrimination in violation of Ohio Rev. Code §4112; 3) sexual harassment in violation of Ohio Rev. Code §4112; 4) retaliation in violation of Title VII; 5) retaliation in violation of Ohio Rev. Code 4112; 6) FMLA retaliation; and 7) breach of Ohio public policy. Based on those claims, Plaintiff sought relief in the form of: 1) reinstatement;[9] 2) lost pay and benefits; 3) compensatory damages; 4) punitive damages; 5) pre-judgment interest; and 6) attorneys' fees and costs.

Prior to trial, Defendant filed a Motion for Summary Judgment on all of Plaintiff's claims. By Order of this Court, dated October 17, 2003, Defendant was granted a Motion for Partial Summary Judgment. Specifically, this Court wrote: "Judgment is granted in favor of defendant on plaintiff's claims of sexual harassment and gender discrimination and on her public policy claim to the extent that it is premised on alleged sexual harassment, gender discrimination and an FMLA violation." Order at p. 27.

---

[9] Because the Court determined that reinstatement was not appropriate in this case, the issue of front pay in lieu of reinstatement was submitted to the jury. The jury awarded no front pay.

6

At the conclusion of Plaintiff's case-in-chief, Defendant was granted Judgment as a Matter of Law on Plaintiff's claim of Ohio public policy violations, leaving only Plaintiff's retaliation and FMLA claims to be decided by the jury. The jury ultimately awarded Plaintiff $128,300.00 in back pay on her Title VII retaliation claim. It did not find in Plaintiff's favor on her FMLA claim, nor did it grant an award for compensatory damages, punitive damages, or front pay.

Nevertheless, Plaintiff is seeking attorney fees and costs for all work performed related to the litigation of this matter. Case law makes clear, however, that an award of attorney fees should be reduced to reflect those claims that were unsuccessful or on which a party did not prevail. This was the conclusion reached in *Hensley v. Eckerhart* (1983), 461 U.S. 424, 440, in which the Supreme Court of United States held: "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claims should be excluded in considering the amount of a reasonable fee. [And] where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained."

In the instant action, Plaintiff seeks remuneration for all legal work performed in this litigation, including her claims for sexual harassment, gender discrimination, and Ohio public policy violations, which were dismissed even before the matter went to the jury. In her Memorandum Contra Motion for Summary Judgment, Plaintiff repeatedly attempted to connect the adverse employment decision to her allegations of gender discrimination and sexual harassment. Specifically, Plaintiff argued that Defendant engaged in gender discrimination by not firing male employees against whom allegations of on-the-job alcohol consumption were made. This Court, however, rebuffed that argument in its Order, reasoning that Plaintiff did not

7

establish the fourth prong of her prima facie case because she failed to show that male employees engaged in conduct of comparable seriousness or that Plaintiff was treated differently than similarly situated managers. Order at pp. 15-16. Moreover, this Court concluded that Plaintiff had not met her burden of proof on her sexual harassment allegations in that there was no evidence to show that "[Plaintiff's] rebuke of Goins' alleged sexual advance led to her termination over a year later" (Order at p. 23), nor did "plaintiff [point] to any non sexual conduct by Goins or comments by Goins which could reasonably be construed as evincing an anti-female animus". Order at p. 24.

Plaintiff dedicated almost half of her Memorandum Contra Motion for Summary Judgment[10] to her claims of sexual harassment and gender discrimination, upon which summary judgment was granted. Additionally, Plaintiff devoted a significant amount of time at trial submitting evidence in support of ultimately unsuccessful claims. A significant amount of Plaintiff's own testimony dealt with her claims for compensatory and punitive damages, as well as front pay. All of Dr. Bley's testimony related to the issue of compensatory damages.[11] The proportion of time devoted to unsuccessful claims is demonstrated by Plaintiff's proffered Jury Instructions, which include instructions for lost wages and benefits (Jury Instruction No. 9); damages for emotional distress (Jury Instruction No. 10); and punitive damages (Jury Instruction No. 11).

A reduction in attorney fees for unsuccessful claims was the outcome in *Hine v. Mineta* (E.D.N.Y. 2003), 253 F.Supp.2d 464. In *Hine*, the plaintiff employee sued the defendant employer for claims of gender discrimination, two claims of hostile work environment, and one claim of retaliation. Id. The jury, however, returned a verdict in favor of the plaintiff on only

---

[10] According to Plaintiff's billing records, Ms. Clark spent 38 hours on the Memorandum in Opposition at an hourly rate of $235.00, which totals $8,930.00.

[11] The costs and fees associated with Dr. Bley's testimony are discussed in more detail in the following section.

one of her claims of hostile work environment. Id.  In calculating the award of attorney fees, the Court determined that a sixty percent reduction to the lodestar amount was warranted. Id. at 467. Specifically, the Court wrote: "[A] significant part of the trial was devoted to testimony on two causes of action and issues related to damages, which the jury decided in favor of the defendant. This lack of success on two of the three causes of action and all of the damages' claims except lost benefits justifies a substantial downward departure from the lodestar." Id.

In the present case, Plaintiff's counsel, like counsel in *Hine*, devoted a considerable amount of time to unsuccessful claims.  Clearly, Plaintiff's counsel should not be compensated for claims on which she received no gain.  As noted in *Shepherd v. Honda of Am. Mfg., Inc.* (S.D.Oh. 2001), 160 F.Supp.2d 860, 874, "[A]n award should adequately compensate counsel yet avoid producing a windfall to the lawyer." Accord *Adcock-Ladd v. Sec of Treasury* (6th Cir. 2000), 227 F.3d 343, 349.  See also *Allen v. Allied Paint Maint. Co. of Tennessee, Inc.* (6th Cir. 1989), 881 F.2d 291, 299 (the Court affirmed the district court's reduction of attorney's fees where the plaintiff achieved "limited success" in pursuing his many claims).

General Ionics contends that Plaintiff's request for an award of attorney fees on claims that were unsuccessful is without merit.  A reduction of Plaintiff's attorney fee application to reflect the significant time spent on unsuccessful claims would be appropriate.  Thus, General Ionics respectfully requests that Plaintiff's award of attorney fees be reduced by 57% ($62,040.70; see calculation set forth below) to reflect four of the seven claims in Plaintiff's Complaint on which she was unsuccessful.

**2.  Because The Jury Did Not Award Any Compensatory Damages, Plaintiff Is Not Entitled To An Award For the Expert Witness Fees of Dr. Jill Bley, Ph.D., The Costs Relating To Her Video Deposition, And The Related Attorney Fees.**

Dr. Jill Bley, Ph.D., was retained by Plaintiff to testify in support of her claim for compensatory damages. As stated earlier, however, Plaintiff was not awarded any compensatory damages for any of her claims. Consequently, Plaintiff is not entitled to an award for fees and costs related to any expenses that were incurred as a result of retaining Dr. Bley as an expert witness.[12] It is incredible that Plaintiff would seek to recover these expenses when she received no benefit from the services rendered.

This was the conclusion that the court reached in *Snell v. Hilton Reno Resort* (D.Nv. 1996), 930 F.Supp. 1428. In that case, the plaintiff alleged that the defendant had engaged in discriminatory conduct, which resulted in her termination. Id. The jury did find that the defendant discriminated against the plaintiff; however it also concluded that the adverse employment actions would have occurred even absent the impermissible discrimination. Thus, the plaintiff was not entitled to damages or back pay. Id.

In determining an award for expert fees, the court reasoned: "Because plaintiff achieved only a mixed motive verdict and was therefore not entitled to any damages, back pay or front pay, the court finds it inappropriate to tax to defendant fees for experts who testified on these issues. " Id. at 1434. Thus, under *Snell,* when the plaintiff is unsuccessful in recovering *inter alia,* compensatory damages, then an award for expert fees is also inappropriate. Accordingly, in

---

[12] According to Plaintiff's Detail Cost Transaction File List, the total costs for Dr. Bley's participation is $8,055.00. This amount includes costs associated with the video deposition of Dr. Bley and expert witness fees. The total attorney fees for Dr. Bley's participation, accrued by Ms. Clark, Mr. Freking, and two paralegals from Freking and Betz, is $8,659.00. This amount includes time billed for any communications with Dr. Bley and attendance at her video deposition.

the case at bar, Plaintiff's award for attorneys' fees and costs should be reduced by $16,174.00, the amount directly attributable to or associated with Dr. Bley's involvement in this litigation.

### IV.     **CONCLUSION**

For the reasons set forth above, Defendant General Ionics, Inc. respectfully requests that Plaintiff's Application and Motion for Attorney Fees and Costs be reduced as follows:

| | |
|---|---:|
| Plaintiff claimed costs: | $14,646.14 |
|     Reduction (Dr. Bley) | $8,055.00 |
|         Cost subtotal: | $6,591.14 |
| | |
| Plaintiff claimed fees: | $161,274.50 |
|     Reduction (fees associated with Dr. Bley testimony) | $8,659.00 |
|     Reduction (excessive hourly rates) | $43,772.50 |
| | $108,843.50 |
| | |
|     Reduction (unsuccessful claims - 57%) | $62,040.70 |
|         Fees subtotal: | $46,802.80 |
|         + cost subtotal: | $6,591.14 |
| | |
|     Fees and Costs Total: | $53,393.94 |

Therefore, Defendant General Ionics respectfully submits that a total award, inclusive of fees and costs, of $53,393.94, is the maximum appropriate fee award in this matter.

                    Respectfully Submitted,

                    /s/ Jan E. Hensel
                    Jan E. Hensel, Esq. (0040785) TRIAL ATTORNEY
                    Kimberly Cocroft, Esq. (0073146) OF COUNSEL
                    BUCKINGHAM, DOOLITTLE & BURROUGHS, LLP
                    191 W. Nationwide Blvd., Suite 300
                    Columbus, Ohio  43215
                    614/221-8448
                    614/221-8590
                    jhensel@bdblaw.com
                    Attorneys for Defendant
                    General Ionics, Inc.

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. Mail, to those parties who are not served via the Court's electronic filing system.  Parties may access this filing through the Court's system.

                    /s/ Jan E. Hensel
                    Jan E. Hensel

«CO2:272034_1»