**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| TERESA READNOWER, | : | Case No. C-1-01-654 |
| | : | Judge Weber |
| Plaintiff, | : | |
| | : | |
| vs. | : | **PLAINTIFF'S MEMORANDUM IN** |
| | : | **OPPOSITION TO RENEWED MOTION** |
| GENERAL IONICS, INC., | : | **OF DEFENDANT, GENERAL IONICS,** |
| | : | **INC., FOR JUDGMENT AS A** |
| Defendant. | : | **MATTER OF LAW** |

Randolph H. Freking (0009158)
Megan E. Clark (0065159)
Trial Attorneys for Plaintiff
Freking & Betz
215 East Ninth Street, Fifth Floor
Cincinnati, OH  45202
(513) 721-1975
(513) 651-2570 (fax)
randy@frekingandbetz.com
mclark@frekingandbetz.com

I.   **INTRODUCTION AND PROCEDURAL BACKGROUND**

This post-trial Motion represents Defendant General Ionics, Inc.'s ("GI") fifth "bite at the apple." This Court has already considered essentially the same factual and legal arguments and denied judgment as a matter of law three times in ruling on Defendant's Motion for Summary Judgment and two Motions for Judgment as a Matter of Law made during trial. Likewise, the jury considered all of Defendant's testimony and argument and carefully rendered a verdict against Defendant. Defendant's Motion amounts to a request that this Court reweigh evidence already carefully evaluated by the jury. This is a classic attempt to invade the province of a unanimous jury and should be rejected. Plaintiff Teresa Readnower ("Ms. Readnower") offered ample evidence to support the jury's finding of retaliation. Ms. Readnower therefore requests that this Court deny the current Motion and allow the jury verdict and judgment to stand.

II.   **LEGAL STANDARD**

In reviewing the jury's verdict, this Court need only ask whether the Plaintiff has offered sufficient evidence to support a finding of retaliation. *Gray v. Toshiba America Consumer Products, Inc.*, 263 F.3d 595 (6th Cir. 2001). The Supreme Court has recently addressed the plaintiff's evidentiary burden in an analogous discrimination case. In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000), the Court said: "In reaching [the] conclusion [that discrimination occurred], however, we reasoned that it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147. The Court went on the explain that:

> Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . *Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated*.

530 U.S. at 147-48 (*emphasis supplied*). This Court is required to draw all reasonable inferences

in favor of the nonmoving party, making no credibility determinations and weighing no evidence. *Reeves*, 530 U.S. at 150. In considering a request for judgment as a matter of law, the Sixth Circuit has held that:

> [E]vidence is sufficient to preclude granting [the motion] when, in reviewing the evidence in the light most favorable to the non-moving party, it would permit a reasonable jury to find in favor of that party.

*McMahon v. Libby-Owens-Ford Co.*, 870 F.2d 1073, 1077 (6th Cir. 1989). Here, Ms. Readnower offered ample evidence for a reasonable jury to find in her favor.

### III.   ARGUMENT

####   A.   The Record Contains Ample Evidence To Support The Jury's Finding Of A Causal Connection Between Ms. Readnower's Protected Activity And Her Termination.

GI wrongly represents that Ms. Readnower relies solely on timing to establish a causal connection. Nonetheless, GI also declares that timing alone cannot establish "causal connection." (Motion at 4) This Court has already rejected this argument. In its summary judgment ruling (docket entry 52), this Court stated "there may be circumstances where temporal proximity alone would be sufficient to support an inference of causal connection." (Order at 17) (*citing Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). This record provides such circumstances.

In any event, a reasonable jury could have relied on suspicious timing, other evidence of retaliatory animus by Mr. Goins, a named decision-maker, and substantial evidence of pretext.

#### 1.   The Jury Could Reasonably Rely On Suspicious Timing.

Turning first to the timing issue, Ms. Readnower complained of harassment/discrimination in October 2000. The next month, GI considered offering her a severance package and release, and referred the "Teresa situation" for legal review. (Def. Ex. 537) A jury could conclude that GI made the termination decision at that point and find such timing very suspect. *See Moon v.*

*Transport Drivers, Inc.*, 836 F.2d 226 (6th Cir. 1987) (holding that the close proximity between any protected activity and an adverse action suggests a causal link); *see Smith v. Ameritech Publishing, Inc.*, 129 F.3d 857 (6th Cir. 1997) (recognizing that the temporal proximity between a termination and eligibility of plan benefits could support an inference that the adverse actions were taken with the intent of interfering with future benefits). Not only did the termination follow on the heels of Ms. Readnower's complaint, but Ms. Readnower never experienced so-called "performance concerns" for the prior four years she had performed the phone room supervisor position. The so-called performance concerns materialized after Ms. Readnower complained about Mr. Goins. The jury could easily conclude that the decision was made shortly after Ms. Readnower's internal complaint. Such evidence standing alone permits a reasonable inference of "causal connection" (especially in light of other inconsistencies addressed below in Section III B)).

In addition, Plaintiff was terminated eight days after she filed a formal charge of discrimination. A reasonable jury could conclude: (1) GI retaliated against Ms Readnower shortly after she first made complaints about Goins; and/or (2) GI retaliated against Ms. Readnower shortly after she filed a charge of discrimination.

      **2.**    **In Addition To Timing, The Jury Could Also Rely On Evidence Of Retaliatory Animus By Mr. Goins, A Named Decision-Maker.**

Aside from and in addition to the timing issue, the jury had ample evidence to conclude that the friction between Mr. Goins and Ms. Readnower resulted in her termination. First and foremost, GI expressly said so. Ms. Readnower testified that when Ms. Seger informed her of her termination, she explained that it was, at least in part, because of the friction between Ms. Readnower and Mr. Goins. Of course, Mr. Goins was the subject of her harassment complaint. Elsewhere, GI has identified him as being a decision-maker in her termination. (Pl. Ex. 24) Any involvement by Mr. Goins in the termination decision would, standing alone, permit a plausible

inference of "causal connection."

Such an inference is bolstered by Mr. Goins' reaction when he had learned of Ms. Readnower's internal complaint to Jack Bredel in September 2000. Mr. Goins demonstrated a retaliatory animus when he called Ms. Readnower into his office and told her she had made a "big mistake" in going over his head to complain to Jack Bredel. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152-53 (2000) (reversing the lower court's grant of judgment notwithstanding the verdict where the trial record contained evidence that one of the decision-makers had made age-based remarks); *Simpson v. Diversitech General, Inc.*, 945 F.2d 156, 160 (6th Cir. 1991) (construing a claim of discriminatory discharge and reversing judgment in favor of defendant-employer where a supervisor who had acted on racial animus contributed to discipline that served as a predicate for the plaintiff's ultimate discharge).

In addition, Ms. Charlotte Ray, another GI employee, testified that when she had made complaints of harassment against Mr. Goins, he had demanded "either she goes or I go." In turn, GI had told Ms. Ray to retract her allegations under threat of termination. A jury could conclude that the same process occurred here. Rather than force Ms. Readnower to retract written allegations, GI instead tried to "silence" the allegations with a termination and severance offer.

For all of these reasons (especially in combination with the inconsistencies discussed below), the jury had ample basis to find a "causal connection" between protected activity and the termination.

### B. Ms. Readnower Offered Ample Evidence To Support The Jury's Finding Of Pretext.

Ms. Readnower offered evidence sufficient to allow a jury to find that GI's offered reasoning did not actually motivate the discharge, was insufficient to motivate the discharge, and/or had no basis in fact. *See Manzer v. Diamond Shamrock Chem. Co.*, 29 F3d 1078, 1084 (6th Cir. 1994).

4

In support of its termination decision, GI cites to supervisory misconduct allegedly uncovered in the course of investigating Ms. Readnower's claim of sexual harassment and discrimination. This supposed misconduct relates to alleged complaints about Ms. Readnower's management style and Ms. Readnower's supposed involvement in alcohol consumption on GI premises. The jury had abundant grounds to reject the legitimacy of this offered explanation.

**1. <u>GI Offered An Inconsistent, After-The-Fact Explanation.</u>**

GI offered inconsistent explanations as to the reason itself. During the termination meeting in January 2001, Ms. Readnower testified that Ms. Seger explained the reason as the difficult relationship between her and Mr. Goins and the so-called alcohol incident. She never mentioned complaints about Ms. Readnower's management style. Nor was GI's reasoning provided to Ms. Readnower in writing at that time. GI later tried to rely on so-called telemarketer complaints after the termination was challenged. Such after-the-fact reasoning squarely demonstrates pretext. *See e.g., EEOC v. Sears Roebuck & Co.*, 243 F.3d 846 (4th Cir. 2001) (reversing summary judgment for employer based on fact that employer had offered different justifications at different times for its failure to hire plaintiff); *followed*, *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639 (4th Cir. 2002) ("The fact that an employer has offered inconsistent post hoc explanations for its employment decisions is probative of pretext.").

Moreover, evidence that an employer articulated its current explanation for the adverse action only after the plaintiff had filed his or her charge constitutes strong evidence of pretext. *See, e.g., id.* (reversing summary judgment based in part on the late appearance of employer's current justification and its failure to disclose the involvement of the alleged decision-maker until after litigation had begun); *Hinson v. Clinch County Bd. of Educ.*, 231 F.3d 821 (11th Cir. 2000) (reversing summary judgment based in part on fact that many of employer's complaints were expressed for the first time only in response to plaintiff's EEOC charge); *Estrada v. Donnelly*

*Corp.*, 708 F. Supp. 834, 837 (W.D. Mich. 1988).

### 2. **GI Contradicted Itself As To The Identities Of The Decision-Makers.**

GI has further contradicted itself with regard to the names of the decision-makers. In the early days of this litigation, GI identified the following persons as being involved in the termination: David McKinley, Daniel Goins, Julie Seger, and Marianne Manson-Winsser. (Pl. Ex. 24). Ms. Seger personally verified this response as "true to the best of my personal knowledge." (*Id.*) Six months later, GI changed its story and apparently attempted to insulate Mr. Goins from the decision-making process. GI submitted a revised answer to this interrogatory naming Mr. McKinley, Ms. Seger, and Ms. Manson-Winsser *but not Mr. Goins*. (Pl. Ex. 26)[1] This amended answer was likewise verified by Ms. Seger as "true and correct to the best of my personal knowledge." (*Id.*) In short, GI offered inconsistent testimony as to who was involved in the termination decision.[2]

These inconsistencies would have easily permitted the jury to disbelieve the explanation offered by GI. It is axiomatic that the employer is in the best position to know who made the termination decision and why. That GI has offered different reasons at different junctures, and has contradicted itself as to who was involved and the role they played, easily permits a reasonable inference that its proffered explanation is not legitimate. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354 (6th Cir. 1998) (reversing summary judgment on an age

---

[1] Though the amended testimony appears to rule out any involvement by Mr. Goins, Mr. McKinley's trial testimony stands in contrast. He declared that he did seek Mr. Goins' input, and Mr. Goins' own notes corroborated this testimony. (*See* Pl. Ex. 22.)

[2] Even more curiously, GI failed to call Ms. Manson-Winsser as a witness. This omission permits a plausible inference that her testimony would not favor GI's case. The Sixth Circuit has reasoned that an adverse inference can be drawn from the failure of a party to call a witness if the witness is "peculiarly within [the opposing party's] power to produce," and the witness' testimony would "elucidate the transaction." *U.S. v. Frost*, 914 F.2d 765, 765 (6th Cir. 1989). Here, Ms. Manson-Winsser was peculiarly within GI's power to produce because she still works for GI. She could clearly "elucidate" the termination decision as she was a named decision-maker. As a result, the jury had ample basis to conclude that she was not called because her testimony would not favor GI.

discrimination claim based, in part, on the fact that the company witnesses contradicted each other on material facts); *Tinker v. Sears & Roebuck Co.*, 127 F. 3d 519, 523 (6th Cir. 1997) (reasoning that inconsistent testimony highlights the presence of a material fact); *accord*, *Barnes v. Gencorp, Inc.*, 896 F.2d 1457, 1473-74 (6th Cir. 1990).

### 3. Ms. Readnower's Qualifications Support The Jury's Finding Of Pretext.

Separate and apart from the contradictions already discussed, Ms. Readnower's qualifications for the role of phone room supervisor further support a reasonable inference of pretext. Ms. Readnower had received very positive commentary on her performance while working for General Manager Darrell Brandenburg. (In fact, he apparently had such regard for her that he hired her as a supervisor after GI fired her.) It was only when Ms. Readnower began reporting to Mr. Goins (whom she accused of harassment) that her alleged performance problems began. Evidence of a plaintiff's superior qualifications and/or performance is sufficient to establish pretext. *Hudson v. Insteel Industries, Inc.*, 2001 U.S. App. LEXIS 3214 (6th Cir. 2001) (affirming denial of employer's motion for judgment as matter of law based in part on evidence that plaintiff had corrected a longstanding problem in one plant and that one of his supervisors had called him to congratulate him on the improvement in that plant's performance); *Ross v. Campbell Soup Co.*, 237 F.3d 701 (6th Cir. 2001) (reversing summary judgment based in part on evidence that plaintiff received favorable performance reports); *Lewis v. Quaker Chemical Corp.*, 2000 U.S. App. LEXIS 22321 (6th Cir. 2000) (affirming denial of employer's motion for judgment as matter of law based in part on evidence that plaintiff's manager had urged division manager to retain plaintiff instead of terminating his employment within six months of the termination decision).

### 4. The Jury Had Ample Grounds To Reject The Factual Basis Offered By GI In Support Of The Termination.

Aside from and in addition to the above-described evidence of pretext, the jury had ample

grounds to challenge the reasoning offered by GI. GI has contended that it terminated Ms. Readnower's employment due to alleged involvement in alcohol consumption at GI and due to complaints supposedly received from the telemarketers. Ms. Readnower has raised at least a genuine issue of material fact as to the basis in fact and/or sufficiency of this explanation.

Turning first to the alleged involvement in alcohol consumption, GI claims that this activity supported the termination. In fact, supervisor Barry Bailey was involved in very similar activity, including knowledge of underage drinking that he failed to report. Mr. Goins learned of Mr. Bailey's involvement and took no action against him (or at most, a very lenient reprimand.)

By contrast, GI acted quite different with Ms. Readnower. In her case, GI failed to request any explanation/denial and claimed that such misconduct mandated termination. Even Ms. Tina Wade (Ms. Readnower's replacement) did not find the alleged misconduct to be very noteworthy. At trial, she did not deem the conduct serious enough to report, even though she herself was aware of it when it occurred. GI's "rush to judgment" regarding Ms. Readnower is even more curious in light of GI's practice of providing due process to persons accused of wrongdoing. GI's failure to provide any due process would permit the jury to conclude that the cited misconduct did not amount to terminable behavior.

GI has also attempted to rely on so-called complaints from telemarketers that came to light *after* Ms. Readnower had taken medical leave. The jury could disbelieve the validity of such "complaints." Ms. Readnower testified that Mr. Goins "set her up to fail" by mistreating and disrespecting her in front of her staff and peers. It is hardly surprising that Ms. Readnower's staff would report having lost respect for her in the course of an investigation that occurred over a month after Ms. Readnower had taken medical leave and while these same individuals were reporting directly to Mr. Goins. In any event, GI cannot legitimately rely on so-called performance concerns that arose while Ms. Readnower reported to Mr. Goins. *See Webb v. Hyman*, 861 F.

Supp. 1094 (D.D.C. 1994) (evidence that upon rejection of her supervisor's advances, supervisor changed plaintiff's days off against her wishes, slowed processing of her disability papers, unfairly singled her out for theft investigation, and denied her leave was sufficient to show pretext).

For all of these reasons, Ms. Readnower has offered ample evidence challenging the legitimacy of GI's proffered basis for termination. As a result, the jury's conclusion on this issue should be upheld.

V.   **CONCLUSION**

For all the reasons contained herein, Plaintiff respectfully requests that Defendant's present Motion be denied and the jury verdict and judgment be preserved.

Respectfully submitted,

/s/ Megan E. Clark
Megan E. Clark (0065159)
Randolph H. Freking (0009158)
Trial Attorneys for Plaintiff
Freking & Betz
215 East Ninth Street, Fifth Floor
Cincinnati, OH 45202
(513) 721-1975
(513) 651-2570 (fax)
mclark@frekingandbetz.com
randy@frekingandbetz.com

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25th, 2004, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system and copies will be mailed via U.S. mail to those parties who are not served via the Court's electronic filing system. Parties may access this filing through the Court's System.

                    /s/ Megan E. Clark

MEGAN'S NOTES:

1. Include summary judgment order.
2. Check abbreviations.
3.
4.
5.
6.
7.